(No. 51894

ERVIN MENKE, Adm'r., Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY, Appellee.

*Opinion filed February 22, 1980.*

CLARK, J., dissenting.

Sprague, Sprague & Ysursa, of Belleville (Bernard J. Ysursa, of counsel), for appellant.

Ducey & Feder, Ltd., of Belleville (C. Patout Ducey, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

The issue in this case is whether plaintiff, Ervin Menke, is entitled to stack insurance coverage under three $10,000 uninsured motorist provisions for a total recovery of $30,000. Defendant, Country Mutual Insurance Company, issued the coverage to plaintiff.

The facts are not in dispute. On February 2, 1975, plaintiff's daughter was killed when the uninsured motor vehicle in which she was a passenger left the roadway and crashed. As a member of plaintiff's household, decedent was covered by the uninsured motorist provisions of two automobile policies issued to plaintiff by defendant. The first policy contained two uninsured motorist provisions covering two vehicles, and the second policy covered one vehicle.

By statute, every insurance policy issued for any motor vehicle registered or principally garaged in Illinois must provide coverage for bodily injury or death caused by an uninsured or hit-and-run vehicle. (Ill. Rev. Stat. 1975, ch. 73, par. 755a(1).) The coverage must be at least in the amount set forth in the Financial Responsibility Law, that is, $10,000 for bodily injury or death of one person and $20,000 for bodily injury or death of two or more persons (Ill. Rev. Stat. 1975, ch. 95½, par. 7–203). In accordance with these provisions, plaintiff obtained uninsured motorist coverage for the minimum amount required on each of his three cars, paying semiannual premiums of $1.60, $1.70, and $1.80 on the three cars. According to an affidavit filed by plaintiff, he was not told that he would not

receive greater coverage in exchange for his payment of three separate premiums.

Following the death of his daughter, plaintiff filed a claim for benefits under all three uninsured motorist provisions in the sum of $30,000. Defendant denied plaintiff's claim that the coverage should be stacked to provide a total recovery of $30,000 on the basis of a certain clause contained in each policy. The clause appeared under the heading "Other Automobile Insurance in the Company" which was printed in capital letters in boldface type. That clause provides:

> "With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy."

Plaintiff then filed a complaint for declaratory judgment in the circuit court of St. Clair County, requesting the court to declare that the uninsured motorist coverage should be stacked. Defendant filed an answer denying plaintiff's claim. The circuit court granted plaintiff's motion for summary judgment and held that the coverage totaled $30,000. The appellate court reversed (69 Ill. App. 3d 83) and found that, by the policy terms, plaintiff's coverage was limited to $10,000. We affirm.

In reaching our decision, the first question we must address is whether the "Other Automobile Insurance in the Company" clause is clear and unambiguous. If the clause is ambiguous, it must be construed in favor of the insured. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336.) If it is unambiguous, there is no need for construction, and the clause may be applied as written, unless it contravenes public policy. (*Putnam v. New Amsterdam Casualty Co.*

(1970), 48 Ill. 2d 71, 84.) Although it is true that limitations on an insurer's liability must be construed liberally in favor of the policyholder (see *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 179), the rule comes into play only where there is an ambiguity. In determining whether there is an ambiguity, the clause must be read in its factual context and not in isolation. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336.

An examination of the clause at issue reveals no ambiguity. The clause clearly states that "the total limit" of defendant's liability under all the policies "shall not exceed the highest applicable limit *** under any one" policy. This language has clear meaning in the context here. Plaintiff owned three uninsured motorist coverages issued by defendant. By policy language clearly applicable to multiple coverages provided by defendant, the coverage could not be stacked.

The situation here contrasts with that in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, in which an "other insurance" clause provided for proration between policies. This court found that the apparent purpose of the clause was to distribute responsibility among multiple insurers. The clause had no meaningful purpose and was therefore ambiguous when applied to coverage issued by one insurer. In light of the ambiguity this court allowed stacking. Also distinguishable is *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, in which this court found a right to stack because the policy did not clearly express that no additional coverage was provided. Our recent case of *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11, in which we found that stacking was permissible, differs from this cause on numerous grounds, including the fact that the clause purportedly prohibiting stacking there was ambiguous, whereas the clause at issue here is not.

Plaintiff argues that we must examine the intent of

the parties to the policy and apply the policy as intended. The intent of the defendant insurance company and the manifest intent of the plaintiff are clearly expressed in the unambiguous language of the antistacking clause. In such a situation, as we have already stated, there is no need to construe the policy language. Plaintiff points to the fact that he paid three separate premiums for the uninsured motorist coverage and argues therefore that he must have intended to receive three separate coverages. However, the existence of any such subjective intent of the plaintiff is rebutted by the clear and unambiguous policy language from which it can be readily seen and understood that coverage was limited. See *Cheseroni v. Nationwide Mutual Insurance Co.* (Del. Super. 1979), 402 A.2d 1215, 1217; *Hartford Accident & Indemnity Co. v. Bridges* (Miss. 1977), 350 So. 2d 1379, 1381.

The next question we must address is whether it would contravene public policy as established in our uninsured motorist statute to apply the "Other Automobile Insurance in the Company" clause. This court has recognized that the purpose of the uninsured motorist statute is to provide coverage which would compensate the insured to at least the same extent as he would have been if he had been injured by a motorist who was insured in compliance with the Financial Responsibility Law. (*Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 89; see also *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 338.) That purpose is not defeated here by the antistacking clause. In no instance will plaintiff receive less than $10,000 coverage, since under each uninsured motorist provision the coverage is for $10,000.

Nor is public policy contravened by the fact that plaintiff paid premiums for each of the uninsured motorist provisions. Plaintiff agreed to the unambiguous limitations on coverage. Furthermore, he can in fact recover under any one of the three coverages. Plaintiff concedes

that it was reasonable to charge him something for the administrative work in writing the additional coverage and agrees that he has received some additional coverage for passengers who are not members of his household and would therefore not be covered by the original policy. There is no evidence of overreaching on the part of defendant, the premiums charged were not exorbitant, and, in short, no reason is advanced which would require invalidation of the limitation clause on public policy grounds. Public policy does not require invalidation of clearly written provisions simply to avoid disappointment to the insured. *Putnam v. New Amersterdam Casualty Co.* (1970), 48 Ill. 2d 71, 86.

In sum, the clear and unambiguous "Other Automobile Insurance in the Company" clause defeats plaintiff's contention that he was entitled to stack the coverage in the three uninsured motorist provisions. For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE CLARK, dissenting:

I think the majority in this case has misinterpreted three of our prior cases and neglected to read this contract *in pari materia* and in its factual context. The reasonable expectations of the insured were thereby defeated. Accordingly, I dissent.

The majority has misread our opinions in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, and *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11. In *Glidden,* plaintiff owned three separate automobile policies from one company covering three separate vehicles. Each policy offered uninsured motorist coverage in the amount of $10,000 per person and $20,000 per accident and contained a clause limiting the company's liability to any one insured to $10,000 per person and $20,000 per accident, regardless of the number

of policies purchased. Plaintiff's wife, an insured under all three policies, was struck and killed by an uninsured motorist and plaintiff sought to collect under all three policies. This court held that stacking was permissible.

The majority attempts to distinguish *Glidden,* relying on the court's statement that the "other insurance" clause had no meaningful purpose unless it applied to insurance obtained from other companies. The majority totally ignored the *Glidden* court's concession that the clause as written precluded stacking:

"[I]nterpreted literally, it appears that the defendant's contention is correct. Each policy states that if there is other insurance which also provides uninsured-motorist coverage, then the liability of the insurer is limited to its *pro rata* share of such coverage. Here, there are three policies, each providing $10,000 of such coverage, or a total of $30,000. The exposure under each policy would thus be one-third of the $10,000 limit, or $3,333.33." 57 Ill. 2d 330, 334.

This court refused to sanction this result despite the clarity of the clause. It refused to interpret the clause in a factual vacuum and examined the reasonable expectations of the insured:

"When an insured purchases three distinct policies from an insurer, each providing the specified coverage, and pays a separate premium for each, does he reasonably contemplate that the 'other insurance' clauses therein are effective to reduce his recovery to what he would have obtained under one policy? We think not." 57 Ill. 2d 330, 336.

A similar analysis was made in *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167. In that case, plaintiff had purchased a policy and, subsequently, an endorsement to it. Both the policy and the endorsement contained a clause denying plaintiff the right to stack her coverage. Plaintiff was standing on a roadway when an

uninsured motorist ran off the road and struck her. Defendant claimed that the plain and unambiguous policy provision indicated the parties' intent. *Squire* specifically noted that the *Glidden* decision addressed the "broader question of the construction of the intent of insureds who pay more than one premium to a single insurer for uninsured motorist coverage" (69 Ill. 2d 167, 175) and then examined the parties' intent:

> "To the extent that it is possible to reconstruct such 'intent,' we think the parties must have intended the additional $1 premium to purchase one of two categories of additional insurance benefits: Either they intended it to purchase (1) indemnification for injuries resulting from additional risks beyond those covered by the primary policy, or (2) additional indemnification for injuries resulting from risks that already were covered by the primary policy." (69 Ill. 2d 167, 175.)

This court went on to hold that the uninsured motorist statute required coverage of insured persons regardless of which motor vehicle was driven by the uninsured motorist and regardless of the location of the insured at the time of the injury. (69 Ill. 2d 167, 179.) In other words, one injured while riding in a second car for which a separate policy was not purchased would be covered by a policy issued for another car. This makes sense in view of the legislative intent to provide extensive uninsured motorist protection for those who are insureds under an automobile liability policy. *Heritage Insurance Co. of America v. Phelan* (1974), 59 Ill. 2d 389, 395.

In *Squire,* this court then reasoned that, since the first policy provided protection up to $10,000 regardless of the car in which the insureds were riding, the second premium payment for the endorsement must have been purchased with the intent to receive additional indemnification. Finally, we noted that the existence of two declaration

pages (one for each provision), each providing $10,000 coverage, created an ambiguity. This ambiguity was resolved in favor of the insured. We emphasized that the insured had no intention of paying the defendant for coverage which he already was receiving. 69 Ill. 2d 167, 180.

The third and most recent case dealing with this question was *Kaufmann v. Economy Fire & Casualty Co.* (1979), 76 Ill. 2d 11. *Kaufmann* reviewed *Glidden* and *Squire* and endorsed their approach, permitting the stacking of insurance policies despite clauses that would have forbidden it.

The instant case differs not at all from these three cases. The pertinent inquiry is: What did the insured reasonably contemplate receiving for his additional premium payments? The answer is the same as in *Glidden, Squire* and *Kaufmann.* He expected to receive additional indemnification.

Even though the policies were purchased for additional vehicles, the insured and his family already were covered by the first policy while riding in those vehicles. This result obtains both by the wording of the policy (Insurer agrees "[t]o pay all sums [resulting from] *** damages from the owner or operator of an Uninsured Vehicle ***") and from our holding in *Squire* that "it is well settled that section 143a requires coverage of insured persons regardless of the motor vehicle the uninsured motorist is driving, and regardless of the vehicle in which the insured person is located when injured." 69 Ill. 2d 167, 179.

A second argument advanced by the defendant in the court below was that it was forced by our uninsured motorist statute to provide uninsured motorist coverage in each policy. It was then contended that (1) since the purpose behind the statute was to compensate the insured only to the extent he would have been compensated if the uninsured motorist were insured in minimal compliance with the law, (2) any additional policy purchased did not

have to provide additional indemnification.

As to the statutory requirements, it is true that the statute requires each policy to contain uninsured motorist coverage, regardless of whether the purchaser is already covered. It could even be said that this provision is "clear and unambiguous." Insurance companies always charge a premium for this insurance. Under the majority opinion, this provision offers insurance companies an opportunity for unjust enrichment. The insurance company charges a premium for a policy the statute requires it to provide and then relies on our analysis of the statutory purpose to provide nothing in consideration for that premium. How can such a result be squared with public policy or common sense? What insurance consumer would knowingly or voluntarily consent to such a result?

The problem cannot be laid at the doorstep of the legislature. We are the ones who construed the purpose of the statute in such a way as to permit this result. If the legislature had wanted to only require that each person be provided with the minimum amount of coverage, it could have provided for such a result. It chose, however, to require each policy to contain uninsured motorist coverage. In implementing this provision, insurance companies charge a premium. We now hold that this premium buys nothing if the insurance company, in a grammatically correct but obtuse form, refuses to provide coverage in policies subsequently obtained.

A final argument advanced by the defendant was that the additional policies added coverage to nonrelative, nonhousehold passengers who might drive the other vehicles. This, in my opinion, is the strongest argument in favor of upholding the policy at issue and requires the most detailed analysis. If this additional risk was what the insured expected to receive for his money, then the policy should be enforced as written. If this additional risk is not what the insured expected to receive, then it should not

be enforced as written.

For several reasons, I do not think the policy should be enforced as written. First, the additional risk purchased is minimal. Second, the premium paid was equivalent to that charged by the first policy, which bought much more extended coverage. Third, the wording of the policy itself was not as clear and unambiguous as the majority contends.

The defendant and the majority admit that the only additional risk purchased by the second and third policy provisions was for nonrelative, nonhousehold persons using the second and third vehicles with the permission of the plaintiff. The plaintiff and his family received no additional risk protection while using the second and third automobiles, since the first policy covered them already. I find it hard to believe that the plaintiff reasonably contemplated this result.

Second, I think the plaintiff was misled by the amount of premiums he had to pay. The base price was $4 per year for each policy. (The semiannual premiums had been reduced for the length of time plaintiff held those policies without making a claim.) In my opinion, no reasonably prudent insurance consumer would expect the first $4 policy to cover his entire family in every conceivable situation and the second $4 policy to cover only those individuals who used his second (or third) car with permission.

Third, the majority has contended that the provision was so clear as to conclusively establish the parties' intent. I do not think that an insurance policy must be as thick and confusing as an unabridged dictionary before an ambiguity is presented. The clearest way to delineate what the second and third policy provisions provided would be to state: "The premium paid for uninsured motorist coverage in this policy purchases no additional insurance coverage for you and your family. It only buys coverage for people using your second (or third) vehicle with your

permission." That would be clear and unambiguous. This policy, in contrast, says on page 3:

"Section II—Protection Against Bodily Injury By Uninsured Vehicles

Coverage U—Damages for Bodily Injury Caused By Uninsured Vehicles

[Insurer agrees] To pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an Uninsured Vehicle because of bodily injury, including death resulting therefrom, hereinafter called "bodily injury," sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such Uninsured Vehicle; ***."

Thus, on page 3, the insured is unqualifiedly told that this policy will provide indemnification for injuries caused by uninsured motorists. On page 4, the policy purports to list "Exclusions Under Section II." The "other automobile insurance within the company" clause is not listed or explained under this heading. Also on page 4 is a heading entitled "Limits of Liability." But the exclusion relied upon is not found there either. On page 5, there is the heading "Other Insurance," but the exclusion at issue in this case is not to be found there either. I think a reasonable person would expect to find the exclusion at issue under one of these headings and would be misled if not discussed there.

On page 4, however, there is the heading "Conditions Under Section II," which states only that 15 general conditions apply to this policy. I suppose the careful reader will then wade through the soporific wording of sections III and IV, find on page 9 "General Conditions," see the magic clause on page 10, remember that it applies to Section II, and conclude therefrom that his or her $4 premium purchases next to nothing. If the plaintiff wanted to discover the actual risk he was purchasing, he would have had to read page 3, which refers to page 1, read therein the definitions of "Persons Insured" and understand that people using the second or third vehicle

with his permission were the only persons receiving uninsured motorist coverage under his second or third policy provisions.

I think the excess verbiage and the necessity for cross-checking between the various sections and subsections would be difficult for a person unskilled in these matters (see *Harhen v. State Farm Mutual Automobile Insurance Co.* (1978), 61 Ill. App. 3d 388, 393). Therefore, I think the more reasonable view is that the plaintiff herein expected to receive additional indemnification for his additional premium payments.

Insurance companies have a tremendous fund of knowledge, rightfully gained, regarding insurance practices, the nature of claims, the types of disputes and the number of private ordering arrangements that can be made. The insurance consumer cannot match this information. Nor can the insurance consumer match the bargaining power of the insurance companies. The power of insurance companies was enhanced by the legislature's command to provide uninsured motorist coverage of a specified amount in each policy written. No freedom of contract exists in this situation, since one cannot be a self-insurer with respect to injuries caused by uninsured motorists. Thus, the insured must purchase the coverage on terms drafted by the insurance company.

Recognizing these facts, the law in this State had favored the insurance consumer when in doubt; insurance companies did business in this State with this understanding. Three of our prior cases, involving contract clauses similar in purpose and effect, evidenced this trend. Another case decided this very term, *Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, illustrated this same trend. The clear signal sent to the insurance companies by this case is that they should litigate and relitigate these issues until a favorable result is reached. I do not wish to send such a signal or to reverse the approach of our prior cases.