112 Ill. App.3d 50 (1983)
445 N.E.2d 33
ESTHER POTTS, Indiv. and as Adm'x of the Estate of Alvin A. Potts, deceased, et al., Plaintiffs-Appellees,
v.
MADISON COUNTY MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 81-346.
Illinois Appellate Court  Fifth District.
Opinion filed January 6, 1983.
Rehearing denied February 4, 1983.
Joseph R. Davidson, Jane E. Wolf, and Don A. Shaffer, all of Bernard, Davidson & Kaseberg, of Granite City, for appellant.
Philip B. Alfeld and David L. Blunt, both of Paul L. Pratt, P.C., of East Alton, for appellees.
Affirmed in part, and reversed in part and remanded.
*51 JUSTICE JONES delivered the opinion of the court:
Three plaintiffs, Esther Potts, individually and as administratrix of the estate of her deceased husband, Alvin A. Potts, Georgia Potts, individually and as administratrix of the estate of her deceased husband, Arley Potts, and Deborah Icke, individually and as administratrix of the estate of her deceased husband, David Icke, brought this action for a declaratory judgment permitting plaintiffs to aggregate or "stack" benefits potentially payable pursuant to certain provisions under the uninsured automobile coverage of seven insurance policies issued by defendant, Madison County Automobile Insurance Company. After a hearing the circuit court ruled that the seven policies could be "stacked." Defendant appeals from that order.
On April 29, 1979, David Icke, Alvin Potts and his father, Arley Potts, were traveling in a Toyota automobile, owned by Arley Potts, when an uninsured vehicle owned and operated by Ted Vance Williams collided with the Toyota. The three occupants of the Toyota were killed. At the time of the collision Alvin Potts was insured under three policies written by the defendant for three separate vehicles owned by him. Likewise, at the time of the collision David Icke was insured under two policies written by defendant for two separate vehicles owned by Icke, and Arley Potts was insured under two policies written by defendant for two separate vehicles owned by him, one of which was the Toyota involved in the collision. The limits of uninsured automobile coverage provided in each policy are $10,000 for each person and $20,000 for each accident. The three insureds lived in households separate from one another.
Before we examine the pertinent provisions of the policies and the case law with respect to them, we must address our attention to serious omissions in the record. At the hearing only two of the seven policies in dispute were introduced into evidence. Thus, five of the seven policies in dispute are absent from the record without explanation. Furthermore, the record does not indicate with certainty which decedent was issued either of the two policies that were entered into evidence. Unfortunately, these two policies differ in one important respect within one of the two paragraphs of the "Other Insurance" provision contained in each policy with the result that, in order to determine whether the policies may be stacked, the ownership of them must first be determined. However, the ownership of the policies cannot be established with certainty from this record.
Of the two policies entered into evidence one bears the words, "EFFECTIVE DATE: 4-1-79." The other policy indicates no effective date. An examination of plaintiffs' exhibits, which include, among *52 other things, a declarations page for each of the seven vehicles involved, suggests that only one of the seven vehicles was purchased on or after April 1, 1979, a 1974 Mazda purchased in "4/79" by Arley Potts, according to the declarations page admitted as part of Plaintiffs' Exhibit Group 4. This page is dated April 18, 1979, and provides for a policy period of six months from "4-18-79 [t]o 10-18-79." The other six vehicles appear from the evidence to have been purchased and insured by defendant prior to April 1, 1979. By inference, then, the policy bearing no effective date applies to one of those six vehicles. Because six of the seven vehicles are similar in apparently having been purchased and insured prior to April 1, 1979, and because plaintiffs entered but two of the seven policies into evidence, we infer that the policy bearing no effective date, and apparently covering one of the six vehicles so purchased, is representative of the five policies unaccounted for in the record. The record, such as it is, suggests that the policy effective April 1, 1979, was issued to Arley Potts, that the other six policies in dispute were issued before that date and that those six policies were alike. If that is, in fact, the case, three of those six policies were issued to Alvin Potts, two such policies were issued to David Icke and one such policy was issued to Arley Potts. The inference that six of the policies were alike accords with statements made by defendant in its brief indicating that six of the policies were alike while one differed from them.
 1 However, defendant in its brief indicates that the policy bearing the effective date of April 1, 1979, was issued to Alvin Potts. Thus, not only is the record woefully incomplete, but statements of defendant in its brief seem inconsistent with such evidence as is actually included in the record. Any doubts arising from the incompleteness of a record will be resolved against the appellant. (Tomlen Group, Ltd. v. Goldfarb (1981), 101 Ill. App.3d 154, 427 N.E.2d 1047; Reed v. Hoffman (1977), 48 Ill. App.3d 815, 363 N.E.2d 140.) Despite the difficulties posed by the omissions in this record, we consider the substantive issues presented. We note that the defendant-appellant, who bears the burden of providing this court with an adequate record for review, though not entirely blameless in the matter, was not primarily responsible for the creation of this deplorable record. To effect a just result, pursuant to our power under Supreme Court Rule 366(a)(5) (87 Ill.2d R. 366(a)(5)), we remand the cause to the circuit court for a determination of precisely which vehicle each of the seven policies, either admitted into evidence or represented by such policy admitted into evidence, actually covered and to whom among the decedents each such policy was actually issued. Having *53 made that determination, the circuit court shall then apply the law as stated in the remainder of this opinion.
Defendant contends initially that the policy issued to Arley Potts for the Toyota, in which the accident occurred, precludes stacking of Arley Potts' other policy by means of a "Limits of Liability" provision, which appears in both of the policies introduced into evidence. That paragraph provides as follows:
"The limit of liability stated in the schedule as applicable to `each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting each person, the limit of liability stated in the schedule as applicable to `each accident' is the total limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by two or more persons as the result of any one accident."
Defendant relies upon Sharples v. General Casualty Co. (1980), 85 Ill. App.3d 899, 407 N.E.2d 674. That reliance, however, is misplaced. In Sharples the court considered a "Limits of Liability" provision containing language virtually identical to that just quoted from the policies issued by defendant. However, that language in Sharples was prefaced by the following, which is absent from the provision in the policies disputed in the case at bar:
"Regardless of the number of (1) persons or organizations who are insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage, or (4) automobiles or trailers to which this policy applies * * *." (85 Ill. App.3d 899-900, 407 N.E.2d 674, 675.)
In Sharples the plaintiff sought to stack the uninsured motorist coverage for two vehicles insured under a single policy. Concluding that the language of the provision was clear and unambiguous, the court held that the plaintiff could not stack the uninsured motorist coverage.
 2, 3 We think that the language of the policies before us does serve to limit the defendant's liability under any one of a number of insurance policies owned by an insured to the limits of that policy but that this language does not prohibit the stacking of benefits potentially recoverable under two or more policies. This construction is one that the language of the policy plainly permits. In view of this construction of the provision vis-a-vis that of the defendant, the provision in the policies is ambiguous and capable of more than one construction. *54 If a clause is unambiguous, the clause may be applied as written unless it contravenes public policy. (Menke v. Country Mutual Insurance Co. (1980), 78 Ill.2d 420, 401 N.E.2d 539.) If the clause is ambiguous, however, it must be construed in favor of the insured. (Menke.) Here the clause is ambiguous and must be construed in favor of the insured. Thus, contrary to defendant's contention, the provision is ineffective to prohibit stacking of benefits potentially recoverable under more than one policy.
We turn now to the "Other Insurance" provision of the policy entered into evidence that bears no effective date, which states as follows:
"With respect to bodily injury to an insured while occupying an automobile not owned by the principal named insured, the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of such other insurance.
Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."
The first paragraph of this provision, known as an "excess-escape" clause (Putnam v. New Amsterdam Casualty Co. (1970), 48 Ill.2d 71, 289 N.E.2d 97), is applicable only to David Icke and Alvin Potts because each of these two men died of injuries received while in a car he did not own. The combination of the "excess" and "escape" aspects of the paragraph work so that the insured's company pays compensation in addition to that available from another source up to the limits of the policy, but only to the extent this "other insurance" of the policy exceeds the policy limits of that other source. Winkler v. State Farm Mutual Automobile Insurance Co. (1976), 35 Ill. App.3d 493, 341 N.E.2d 379.
Defendant maintains that the language of this clause precludes stacking of the coverage of each policy owned by David Icke and Alvin Potts because the "similar insurance" available to David Icke and *55 Alvin Potts refers to the coverage afforded to Arley Potts' policy on the Toyota involved in the accident. Plaintiffs argue that because the paragraph "makes no mention of other insurance with Madison County Mutual" the paragraph does not prohibit stacking of such coverage. The paragraph in dispute states that "the insurance under this coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance * * *." (Emphasis added.) The paragraph makes plain that the "other insurance" must be both "available" and "applicable * * * as primary insurance" and contemplates the situation in which a policyholder is injured in an insured vehicle owned by another person whose insurance coverage is primary. In view of the requirement that the other insurance be "primary," it makes no sense to say that the "other insurance" referred to in the paragraph embraces other insurance of the insured under the policy in dispute to prohibit stacking because such insurance could not be "primary." Although neither party cites Winkler where the court held that another, but significantly different, "other insurance" provision unambiguously restricted stacking of two policies issued by the defendant to the decedent therein for separate vehicles, we find it helpful for purposes of comparison. In the policies in Winkler the provision specified that the insurance thereunder applied only as excess insurance over any other similar insurance available to an injured occupant of a motor vehicle not owned by a named insured without the additional requirement, as appears in the provision before us, that the other similar insurance also be primary insurance.
 4 Because the paragraph admits of another construction than that urged by defendant, it is ambiguous and, therefore, must be construed in favor of the insured. (Menke.) For this reason any policies owned by David Icke or Alvin Potts containing this language under the "Other Insurance" provision may be stacked.
 5 We turn now to a consideration of the second paragraph of the "Other Insurance" provision quoted above, which applies to Arley Potts, who was at the time of the collision occupying an automobile he owned. The language of this clause, known as a pro rata clause, is identical to that disputed in Glidden v. Farmers Automobile Insurance Association (1974), 57 Ill.2d 330, 312 N.E.2d 247. In Glidden an insured to whom that paragraph applied sought to stack the uninsured motorist coverage of three policies issued to him by the same insurer for three separate vehicles. All three policies contained the same provision. The court found the paragraph to mean literally that if there is other insurance also providing uninsured motorist coverage, *56 the liability of the insurer is limited to its pro rata share of such coverage. In construing the clause the court stated:
"The apparent purpose of `other insurance' clauses is to make certain that one company does not pay a disproportionate amount of a loss which is to be shared with another company. There is no purpose in proration unless the `other insurance' is written by another company. The clause has no meaningful purpose when applied to coverage issued by one company to one insured. In this situation its meaning is ambiguous, and the clause should be construed in favor of the insured." (57 Ill.2d 330, 336, 312 N.E.2d 247, 250.)
Contrary to defendant's assertions, this paragraph differs markedly from that disputed in Menke. The meaning of the paragraph, for the reason given in Glidden, is in this situation ambiguous and should therefore be construed in favor of the insured. (See Menke and Glidden.) For this reason any policy owned by Arley Potts containing this language under the "Other Insurance" provision may be stacked.
With respect to the policy bearing the effective date of April 1, 1979, the first paragraph of the "Other Insurance" provision of it is identical to the first paragraph of that provision in the policy bearing no effective date. The clause applies to David Icke and Alvin Potts, each of whom received injuries as an occupant of an automobile he did not own. Because the clause is identical to that which we have already considered, what we have said applies equally to this paragraph as well. Thus, if either David Icke or Alvin Potts is found on remand to have owned the policy bearing the effective date of April 1, 1979, the uninsured motorist coverage provided by it may be stacked.
The second paragraph of the "Other Insurance" provision found in the policy bearing the effective date of April 1, 1979, states as follows:
"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him including other policies issued by this company and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of any one policy of insurance."
In Menke, where the plaintiff sought to stack the uninsured motorist coverage clause of one policy containing two uninsured motorist provisions covering two vehicles and a second policy covering one vehicle, both of which were issued by the same insurer, the following clause, appearing under the heading of "Other Automobile Insurance in the Company," was held to be clear and unambiguous:
"`With respect to any occurrence, accident, death or loss to *57 which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.'" (78 Ill.2d 420, 423, 410 N.E.2d 539, 541.)
Defendant argues in its brief that this language of the policies in Menke parallels that of the provision for "Limits of Liability," which we discussed above, but does not suggest that the language parallels or has any application to that of this paragraph. We, however, think it does. Like the clause in Menke, this clause omits mention of proration between policies. Like the language in Menke, this language is clear and unambiguous, from which, as that court said, "it can be readily seen and understood that coverage [is] limited." (78 Ill.2d 420, 425, 401 N.E.2d 539, 542.) If a clause is unambiguous it may be applied as written unless it contravenes public policy. (Menke.) In Menke the court found that public policy was not contravened by the application of the unambiguous clause where, as here, a premium was paid for the uninsured motorist coverage provided by each policy. The policyholder here, as could the plaintiff in Menke, can recover under any one of his uninsured motorist coverages. The clause being unambiguous, it may be applied as written. In view of the words, "Except as provided in the foregoing paragraph," which paragraph applies, as we have said, only to David Icke and Alvin Potts, the second paragraph can apply only to Arley Potts. Thus, if on remand Arley Potts is found to have been the owner of the policy bearing the effective date of April 1, 1979, the uninsured motorist coverage of that particular policy may not be stacked.
In summary, the policy bearing no effective date and those it represents may be stacked whether issued to Alvin Potts, David Icke or Arley Potts. The policy bearing an effective date of April 1, 1979, may be stacked if issued to either Alvin Potts or David Icke but may not be stacked if issued to Arley Potts.
Affirmed in part; reversed in part; remanded with directions.
HARRISON, P.J., and KASSERMAN, J., concur.