NORENE BECKER, as Guardian of the Estate of Michael Becker, a Disabled Adult, Plaintiff-Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 5—85—0826

Opinion filed July 21, 1987.

Robert D. Francis, of Dunham, Boman & Leskera, of East St. Louis, for appellant.

Philip G. Feder, of Ducey, Feder & Ducey, Ltd., of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

The plaintiff, Norene Becker, as guardian of the estate of Michael Becker, a disabled adult, appeals from a judgment of the circuit court of St. Clair County in favor of the defendant, Country Mutual Insurance Company. The appeal presents three issues for review: (1) whether the trial court erred in "finding the set-off provision in defendant's policy applicable to the medical expense claim of the plaintiff"; (2) whether the plaintiff is entitled to recover, pursuant to section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767), for the defendant's vexatious refusal and "failure to pay plaintiff a portion of medical expenses covered under defendant's policy"; and (3) whether the plaintiff may stack medical coverages under the policy in question.

The plaintiff brought suit against the defendant on November 22, 1982, seeking in count I of the complaint $20,000 in medical benefits under a policy of automobile insurance issued by the defendant to Roy Rusteberg, in whose car Michael Becker was riding as a passenger when he was severely injured in an accident on October 21, 1979. Michael Becker had been adjudicated a disabled person, totally without capacity to care for his person or estate, on February 17, 1982, and the plaintiff herein, his mother, was appointed guardian of both his person and estate. The parties stipulate that Michael Becker's medical expenses have exceeded $100,000. At the time of the accident two vehicles of Roy Rusteberg's were insured under the policy, namely, a 1974 Chevrolet, the vehicle in which Michael Becker was in-

jured, and a 1976 Ford. The policy, attached to the complaint as an exhibit, indicates that for each of the two vehicles, the coverage limitation for medical payment for each person injured in an accident is $10,000. The plaintiff sought to stack the medical benefits for the two automobiles and sued for damages in a total amount of $20,000.

In count II of the complaint the plaintiff sought $100,000 in punitive damages for the defendant's alleged vexatious refusal to pay the medical benefits sought in count I.

Concerning "Liability," the policy in question provides in section I for "Coverage A—Bodily Injury Liability." In addition, concerning "Medical Payments and Death Benefits," the policy provides in section III for "Coverage C—Medical Payments." Under the "Limits of Liability" specified in section III at page six, the policy states as follows:

"B. ***

If claim is made under Coverage C of this Section III, and claim is also made against any person who is an insured under Coverage A, Section I of this policy on account of bodily injury sustained in an accident by a person who is an insured under this Section III:

1. any payment made under Coverage C, Section III, to such insured shall be applied in reduction of any amount which he may be entitled to recover from any person who is an insured under Coverage A, Section I, and

2. any payment under Coverage A, Section I, to any claimant who is an insured hereunder shall be applied in reduction of any amount which he may be entitled to recover under Coverage C, this Section III."

It appears from the record that a negligence suit, docket No. 80-L-0224, was brought on March 19, 1980, for Michael Becker against Roy Rusteberg seeking damages for bodily injury, including pain and suffering, lost earnings, and medical expenses. In that suit the plaintiff demanded settlement of all claims against Roy Rusteberg for $25,000, which plaintiff's counsel apparently understood to be the limits of the policy for bodily injury. Trial of the cause was scheduled to commence in May of 1982. At about that time plaintiff sought an additional $10,000 in benefits under the provision for medical payments in the policy. On January 13, 1983, $25,000 was paid to the plaintiff in the negligence suit. An order of the trial court filed on that date approved a stipulation of the parties concerning the payment and dismissed the cause, setting forth the stipulation as follows:

" 'It is hereby stipulated and agreed by and between the par-

ties hereto that the payment to Plaintiff and their attorneys of the sum of $25,000 on behalf of the defendant in no legal or factual manner affects the position of those parties as to the effect of such payment, it being the contention of Plaintiff that such payment releases all claims against deft [defendant] only under the liability provisions of his insurance policy #A12A1333627-1 with Country Mutual Insurance Co., and not the medical pay provisions and it being the contention of the deft [defendant] that such payment releases all and any claims against deft [defendant] and all other persons or parties on his behalf. All contentions are preserved and to be determined in Cause #82-L-969 [the instant case].' "

The order of January 13, 1983, provided further that "all above issues [are] transferred to 82-L-969."

A hearing was held in the case at bar on May 3, 1984, at which the parties stipulated that Michael Becker's medical expenses amounted to "well over $100,000." Following the hearing the parties submitted written arguments to the trial court. In response to the plaintiff's written argument, filed on July 6, 1984, the defendant argued in part, under the heading "Further Argument of Defendant," as follows:

"Defendant calls this Court's attention to page 6 of the policy limits of liability under of [sic] Section 3, coverage C, which is medical pay, death benefits. On page 6 under limits of liability, person is defined in paragraph a, occurrence is defined in paragraph b and thereunder, beginning with with [sic] wording: If a claim is made, through the finish of limits of liability [sic] it is clear that should this Court award Ten Thousand Dollars ($10,000.00) to Becker, the Company is automatically entitled to a set-off of Twenty-Five Thousand Dollars against that Ten Thousand Dollars ($10,000.00), which[,] of course, means that there would be nothing due and owing. This is by the contract language of the policy and is clear and unambiguous."

In the second of the plaintiff's written arguments, which was filed on August 6, 1984, under the heading, "Reply to Further Argument of Defendant," plaintiff states that the "Defendant need not cite the *Menke* decision (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539), since plaintiff has already conceded that the Country Mutual policies cannot properly be stacked, according to the policy provision and case law interpretting [sic] same."

In an order entered on November 19, 1985, the trial court set forth the facts of the case and made several findings including the

finding "[t]hat Plaintiff released all claims, including claims for vexatious refusal to pay and attorney's fees, arising from and under the liability provisions of the policy in question by his stipulation of January 13, 1985." The court stated further:

"To be more specific, this Court holds that all claims pertaining to the liability coverage, including vexatious refusal to pay benefits and attorney's fees either commencing with the date of the accident October 21, 1979, or with plaintiff's first demand letter until the present, are barred. Plaintiff's claims for vexatiousness and attorney's fees, etc., are limited to facts occurring after the court date in May, 1982, when plaintiff first demanded medical pay benefits; it is therefore not appropriate to consider those facts and arguments that pertain to questions of liability and the extent or duration of personal injuries; the parties stipulate that plaintiff's medical expenses were ten-fold the amount payable under the medical pay provision; had defendant immediately paid the $10,000 upon demand in May of 1982, ninety percent of the medical bills would have remained unpaid, plaintiff's injuries would have remained the same; it would seem that the only actual damages plaintiff would have suffered by reason of non-payment of the $10,000 would have been loss of interest on the money for 3½ years (perhaps an unrealistic assumption since the money was owing to medical creditors) plus attorney's fees for the present action. However, in view of my next finding, these issues are moot."

The court stated its next finding as follows:

"The provisions of the policy in question (Conditions Under Section III, Limits of Liability, Section B, paragraph 2) provide that any payments under Coverage A, Section 1, Bodily Injury Liability, shall be applied in reduction of any amount which he may be entitled to recover under Coverage C, Section III, Medical Payments and Death Benefits. The language is clear, unambiguous and enforceable unless void (against public policy) or waived."

The trial court entered judgment in favor of the defendant and against the plaintiff, and plaintiff has perfected the instant appeal from this judgment.

■ With respect to the first issue raised by plaintiff, concerning the setoff provision in the policy applicable to the claim for medical expenses, she contends on the basis of *Melson v. Illinois National Insurance Co.* (1971), 1 Ill. App. 3d 1025, 274 N.E.2d 664, *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312

N.E.2d 247, and *Hoel v. Crum & Forster Insurance Co.* (1977), 51 Ill. App. 3d 624, 366 N.E.2d 901, that setoffs in insurance policies apply only where necessary to prevent double exposure for the same expense. She argues that Michael Becker's damages are far in excess of the policy limits for bodily injury liability and medical expenses combined, his medical expenses alone being in excess of $100,000, and that the defendant is therefore not entitled to a setoff. The plaintiff contends further that if the defendant is arguing that the first part of its setoff provision

> "actually reduces the amount of Rusteberg's bodily injury liability coverage from $25,000 to $15,000, such a reduction would be in contravention of the public policy of this State since the provision could, in effect, reduce an insured's limits below the requirements of the Financial Responsibility Act (Ill. Rev. Stat., Ch. 95½, Par. 7—301 *et seq.*)."

Plaintiff asserts as well that it is "unlawful and contrary to the public policy of this State for defendant to reduce plaintiff's medical expense coverage to the extent of the liability payments made," apparently because an insured would be "penalized for settling his bodily injury liability claim before collecting his medical payment benefits under the policy."

It is well established that if a clause is ambiguous, it must be construed in favor of the insured. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.) If the clause is unambiguous, however, there is no need for construction, and the clause may be applied as written, unless it contravenes public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539; *Strzelczyk v. State Farm Mutual Auto Insurance Co.* (1985), 138 Ill. App. 3d 346, 485 N.E.2d 1230, *aff'd* (1986), 113 Ill. 2d 327, 497 N.E.2d 1170.) Although it is true that limitations on an insurer's liability must be construed liberally in favor of the policyholder, the rule comes into play only where there is an ambiguity. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.) In the instant case the plaintiff makes no assertion that the clause in question is ambiguous. Therefore, there is no need for us to construe it, and it may be applied as written unless it is in contravention of public policy.

In *Melson* the plaintiff was injured in an automobile collision caused by the negligence of an uninsured motorist. He allegedly incurred damages of $12,000 for medical expenses, $14,000 for lost wages, and an unliquidated sum for a permanent disability. At the time of the accident the plaintiff was insured by the defendant under

a policy providing for uninsured-motorist coverage with a limitation of $10,000 for each injured person and $20,000 for each accident. The policy provided additionally for medical-payment coverage up to a maximum of $2,000 for each person. The defendant paid the plaintiff $2,000, the limit of medical coverage, and offered to pay $8,000 under the uninsured-motorist liability coverage, contending that it could credit the $10,000 uninsured motorist liability coverage with the $2,000 already paid under the medical-payment coverage because of the following provision contained in the uninsured motorist coverage of the policy:

> " '(d) The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured automobile which represents expenses for medical services paid or payable under Part II (medical expense coverage).'" (*Melson v. Illinois National Insurance Co.* (1971), 1 Ill. App. 3d 1025, 1026, 274 N.E.2d 664, 665.)

In *Melson* the plaintiff explicitly admitted the validity of the provision and, as a consequence, the court was not called upon to decide whether the provision violated public policy. The defendant in *Melson* admitted that the plaintiff's damages were in excess of $12,000 and that the provision was designed so that " 'medical expenses as an item of damages for bodily injury shall not be paid twice by the insurance company' " (1 Ill. App. 3d 1025, 1028, 274 N.E.2d 664, 666). The court concluded that allowing the plaintiff the full $10,000 in liability coverage would not be awarding him double payment for the $2,000 in medical expenses already received, holding that "where the total proven or undisputed damages incurred by the insured are greater than the combined total of uninsured motorist and medical coverage, the crediting provision cannot apply" (1 Ill. App. 3d 1025, 1028, 274 N.E.2d 664, 666).

In *Glidden* the defendant insurer contended that payments made under the medical-payment provisions of its policy must be set off against the payments to be made under the uninsured-motorist coverage of the policy. The supreme court in *Glidden* quoted the holding of *Melson* and added the following:

> "Setoffs are to apply only where necessary to prevent double exposure for medical payments. We agree with that conclusion.
>
> If the crediting provisions were to apply in all situations, including those where the total damages suffered by the insured exceed the combined total uninsured-motorist and medical-payment coverages, the net result would be that the uninsured-mo-

torist coverage under the policy would not assure compensation comparable to that available if the insured had been injured by one insured in compliance with the financial responsibility law. Such an interpretation would run afoul of the minimum coverage required under our decisions in *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, and *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71." *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 338, 312 N.E.2d 247, 251.

In *Hoel* the plaintiff contended that the defendants, as insurers, improperly claimed a setoff of a payment by another insurer for uninsured-motorist coverage against their liability under personal injury protection and excess protection coverages of their policy. Quoting *Glidden* and citing *Melson*, the court in *Hoel* ruled that in the event the defendants' policy was found on remand to be in effect, the defendants were not entitled to the setoff unless they could show a duplication of payment.

As the defendant here points out, *Melson*, *Glidden*, and *Hoel* involve setoffs with regard to uninsured-motorist coverage. The purpose of the uninsured motorist statute (Ill. Rev. Stat. 1985, ch. 73, par. 755a(1)) is to provide coverage that would compensate the insured to at least the same extent as he would have been compensated had he been injured by a motorist insured in compliance with the financial responsibility law. (See *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539; Ill. Rev. Stat. 1985, ch. 95½, par. 7—101 *et seq.*) The concerns expressed by the court in *Glidden* with respect to the application of setoffs are directed to the possibility that, if such setoffs were to apply in all situations, uninsured motorist coverage under a policy would not assure compensation comparable to that available had the insured been injured by an individual insured in compliance with the Financial Responsibility Law. Under these circumstances we do not think that the statements in *Melson*, *Glidden*, and *Hoel* were intended to apply to all setoffs, including those, such as the one in the instant case, that bear no relationship to uninsured motorist coverage. Thus, contrary to plaintiff's assertions, *Melson*, *Glidden*, and *Hoel* are not controlling here.

■ The plaintiff herein argues that a reduction in bodily injury liability coverage by means of the medical payments setoff provision could bring an insured's limits below the requirements of the financial responsibility law, which provides in section 7—302 (Ill. Rev. Stat. 1985, ch. 95½, par. 7—302) for a policy unit of not less than $15,000 for bodily injury to one person per accident and $30,000 for bodily in-

jury to two or more persons per accident. It is evident that the $10,000 limit of medical-payment coverage involved here could not reduce the $25,000 limit of bodily injury coverage below the amount of $15,000 required by section 7—302 of the financial responsibility law with respect to bodily injury to any person. Hence, the plaintiff's argument is not well taken.

■ Similarly, we find without merit the plaintiff's further argument that it is against the public policy of the State of Illinois to reduce medical-expense coverage to the extent of the liability payments made because the insured would be penalized for settling his claim for bodily injury liability before collecting his medical-payment benefits under the policy. Since that part of the policy providing for the setoff in question incorporates mirror provisions with regard to payments for medical expenses and for bodily injury liability, it is obvious that the operation of the setoff cannot be defeated by bringing the claim for medical expenses first.

The plaintiff advances no other arguments that the clause in question contravenes public policy. We conclude that the trial court was correct in applying the clause as written or, in the words of the plaintiff, in "finding the set-off provision in defendant's policy applicable to the medical expense claim of the plaintiff."

■ With respect to the second issue the plaintiff raises, concerning the defendant's allegedly vexatious refusal and failure to pay plaintiff a portion of the medical expenses in question, she maintains that the defendant "knew long before it settled with the plaintiff for the bodily injury claim that it had contractually agreed to pay a portion of Michael Becker's medical expenses. Nevertheless, it made no offer to pay them but instead claimed they were not owed." In view of the unambiguous setoff provision in the policy with respect to claims for payment of both medical expenses and bodily injury liability, the defendant's refusal and failure to make a payment under the coverage for medical expenses, after its payment of the policy limits for bodily injury liability, was neither vexatious nor unreasonable.

Inasmuch as the plaintiff conceded in the trial court that the defendant's "policies cannot properly be stacked," we do not address the issue of stacking presented here.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.