NOTICE
Decision filed 08/28/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130366

NO. 5-13-0366

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ANTHONY CRACKEL and DAVID CRACKEL, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 11-MR-92 |
| STATE FARM INSURANCE COMPANY, | ) ) | Honorable Allan F. Lolie, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Welch and Justice Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, David Crackel and Anthony Crackel, filed a complaint for declaratory judgment against defendant, State Farm Insurance Company (State Farm), seeking compensation from an insurance policy issued by State Farm for the loss of their vehicle. State Farm filed its answer and countercomplaint for declaratory judgment, asserting that plaintiffs' loss of vehicle fell under an exception in their insurance policy whereby State Farm was not liable.    Plaintiffs subsequently filed an answer to State Farm's countercomplaint, and after completing discovery, both parties filed cross-motions for

1

summary judgment with the circuit court (735 ILCS 5/2-1005 (West 2012)).

¶ 2     The circuit court granted State Farm's motion for summary judgment and denied plaintiffs' motion for summary judgment.  Plaintiffs now appeal the circuit court's ruling, contending that the court erred in granting State Farm's motion for summary judgment and denying plaintiffs' motion for summary judgment on the ground that the loss of plaintiffs' vehicle fell within an exclusion to their insurance policy and, therefore, was excluded from coverage.  The exclusion the circuit court relied upon provides that coverage shall be excluded when an insured voluntarily relinquishes possession of his or her vehicle under either an actual sales agreement or a presumed sales agreement.

¶ 3     Plaintiffs assert that their loss of vehicle is not excluded from coverage under their insurance policy because relinquishment of their vehicle was not voluntary, and ask that judgment be entered in favor of plaintiffs on both motions for summary judgment.  We reverse the judgment of the circuit court and remand with directions to enter judgment for plaintiffs and against defendant on plaintiffs' motion for summary judgment and deny State Farm's motion for summary judgment.

¶ 4                                  BACKGROUND

¶ 5     On July 23, 2011, plaintiff Anthony Crackel sold his 2003 Mercury Marauder to a man who identified himself as Kevin Northington.  Plaintiff had advertised his vehicle on Auto Trader, and Northington contacted plaintiff concerning the purchase of the vehicle.  After plaintiff and Northington met in person, Northington took plaintiff's vehicle for a test drive and personally inspected it, after which Northington made an offer of $10,500 to purchase the vehicle.  Plaintiff accepted the offer.

2

¶ 6    After plaintiff accepted Northington's offer, he prepared duplicate originals of a bill of sale that documented the sale of his vehicle to Northington. Plaintiff and Northington each completed and signed portions of the bill of sale, with plaintiff signing the bill of sale as the seller. After signing the bill of sale, plaintiff gave all of the vehicle's keys to Northington and allowed him to take possession of the vehicle. In return, plaintiff accepted a cashier's check in the amount of $10,500. However, when plaintiff attempted to deposit the cashier's check, his bank informed him that the check was a counterfeit and was fraudulent.

¶ 7    The Effingham police department then opened an investigation. After the investigation was completed, it was determined that the man who identified himself as Northington was actually George Caldwell, who was a member of an auto theft ring. The case was investigated as a theft by deception. Caldwell, who identified himself as Northington, was arrested and charged in federal district court in the southern district of Illinois with aggravated identity theft, wire fraud, and conspiracy to possess and pass counterfeit securities. Caldwell (Northington) pled guilty to these charges on March 15, 2013, and admitted that he had used a counterfeit cashier's check to defraud plaintiffs when he used the fraudulent check for payment of plaintiffs' vehicle.

¶ 8    At issue in this case is the automobile insurance policy that State Farm issued to plaintiffs that was in effect on July 23, 2011, the date that Northington drove away with plaintiffs' vehicle after providing a fraudulent cashier's check. After discovering that the cashier's check was fraudulent, plaintiffs sought indemnity from State Farm for the loss of their vehicle. However, State Farm denied the claim pursuant to an exclusion in the

insurance policy that State Farm alleges applies to these facts. The circuit court granted State Farm's motion for summary judgment, finding the exclusion barred State Farm from liability for plaintiffs' loss of vehicle. Plaintiffs now appeal the circuit court's ruling, contending that the exclusion in their insurance policy does not apply, and, therefore, State Farm is liable for their loss of vehicle.

¶ 9                                              ANALYSIS

¶ 10    On appeal, plaintiffs contend that State Farm is obligated to compensate them for their loss of vehicle pursuant to the terms of their insurance policy. The circuit court found the theft of plaintiffs' vehicle was excluded from State Farm's insurance coverage based upon policy provisions of that coverage provided to the court. We disagree.

¶ 11    The relevant provisions under the "Physical Damage Coverages" section of the insurance policy plaintiffs purchased from State Farm provide that State Farm will pay for the following:

"a.  for loss *** to a covered vehicle; and

b.  transportation expenses incurred by an insured as a result of the total theft of your car or a newly acquired car. These transportation expenses are payable:

(1)  during the period that:

(a)  starts on the date you report the theft to us; and

(b)  ends on the earliest of:

(i) the date the vehicle is returned to your possession in a drivable condition;

4

(ii) the date we offer to pay for the loss if the vehicle has not yet been recovered; or

(iii) the date we offer to pay for the loss if the vehicle is recovered, but is a total loss as determined by us[.]"

The policy defines loss as "direct, sudden, and accidental damage to" or "total or partial theft of" a covered vehicle. The policy also contains an exclusion for which the insurer may deny liability for a loss. The exclusion states that State Farm is not liable for "loss to your car or a newly acquired car if an insured voluntarily relinquishes possession of that car to a person or organization under an actual or presumed sales agreement."

¶ 12 The exclusion State Farm relies upon for denying coverage to plaintiffs' vehicle states that there must exist an actual or presumed sales agreement under which the insured voluntarily relinquishes possession. We first address whether an actual sales agreement existed between plaintiffs and Northington.

¶ 13 An offer, acceptance, and consideration are the basic ingredients of a contract. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639 (1977). For an actual sales agreement to exist, there must be an offer and acceptance of consideration. Northington made an offer of $10,500 to purchase plaintiffs' vehicle that was accepted. However, there was no actual consideration present in the agreement. Consideration is defined as a "bargained-for exchange of promises or performance." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1027, 864 N.E.2d 927, 937 (2007). Because the cashier's check plaintiffs received in exchange for the vehicle was fraudulent, Northington's offered consideration of $10,500

5

for plaintiffs' vehicle did not qualify and was not effective as consideration. Furthermore, Northington never received title to plaintiffs' vehicle. If the transaction between plaintiffs and Northington had not been fraudulent and the transfer of ownership and title to Northington had been proper, a sales agreement would have existed. However, the cashier's check given to plaintiffs was void from the beginning, as Northington never intended to purchase the vehicle or provide consideration. Accordingly, because consideration was not present in the alleged sales agreement and Northington never acquired title to plaintiffs' vehicle, an actual sales agreement did not exist. Therefore, an actual sales agreement cannot be grounds for denying plaintiffs' coverage.

¶ 14    We now address whether a presumed sales agreement existed. First, we must analyze the meaning of the phrase "presumed sales agreement," as State Farm's insurance policy does not clearly define the phrase. State Farm points out that when a term in an insurance policy is not defined, the court looks to the dictionary definition. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436, 930 N.E.2d 999, 1005 (2010). State Farm asserts that when looking to the dictionary definition, a presumed sales agreement in the context of the policy's exclusion is where one assumes that he has an agreement with another to sell the insured vehicle in exchange for money. Notably, where the provisions of an insurance policy are clear and unambiguous, there is no need for construction and the provisions of the policy will be applied as written. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541 (1980). However, as plaintiffs point out, if it can be reasonably said that a provision of an insurance contract is ambiguous, it will be construed in favor of the insured and against the insurer who

6

drafted the ambiguous provision.  *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203, 1205 (1981).  If policy language is susceptible to more than one reasonable interpretation, the language is considered ambiguous and the court must construe the policy in favor of the insured and strictly against the insurer.  *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004).

¶ 15    In this case, the term "presumed" is susceptible to more than one reasonable interpretation because the term is not explicitly defined by the policy.  Furthermore, where an exclusionary clause is relied upon to deny coverage, its application must be free from doubt because "any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 367, 522 N.E.2d 758, 762 (1988).  A policy provision that "purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific."  *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393, 830 N.E.2d 575, 582 (2005).  State Farm bears the burden as the insurer in this case to show that plaintiffs' claim falls within an exclusion.

¶ 16    The phrase "presumed sales agreement" is ambiguous because there is more than one reasonable interpretation of the phrase.  There is no distinct language in State Farm's policy that reveals who must presume that a sales agreement exists.  One interpretation is that the insured party and buyer must both reasonably conclude that a sales agreement exists.  Another interpretation is that only the insured party must conclude that a sales agreement exists.  There simply is no definitive language in the policy that points to a

7

specific understanding of the phrase, causing the phrase to be ambiguous.

¶ 17    As the buyer of the vehicle in this case, Northington could not have presumed that a sales agreement existed between him and plaintiffs because he knowingly used a fraudulent cashier's check to defraud plaintiffs for payment of the vehicle. Because there is more than one interpretation of the phrase "presumed sales agreement," any doubts as to coverage must be resolved in favor of the insured, and since Northington could not have presumed that a sales agreement existed, we conclude a sales agreement did not exist.

¶ 18    We now address whether State Farm is liable for the loss of plaintiffs' vehicle. State Farm's insurance policy covers total or partial theft of a covered automobile. While the term "theft" is not specifically defined in State Farm's insurance policy, it is clearly defined in the Illinois Criminal Code as occurring when someone knowingly obtains or exerts "unauthorized control over property of the owner" or obtains by "deception control over property of the owner." 720 ILCS 5/16-1(a)(1)-(2) (West 2010). A person commits theft by deception when he knowingly obtains by deception control over the property of the owner and plans to permanently deprive the owner of the use or benefit of the property. *People v. Kotlarz*, 193 Ill. 2d 272, 299, 738 N.E.2d 906, 919 (2000).

¶ 19    In this case, Northington committed a theft by deception, as he obtained control of plaintiffs' vehicle by misrepresenting who he was and paying for the vehicle with a fraudulent check. State Farm's insurance policy explicitly states that it will pay for a loss to a covered vehicle, and defines a loss as a partial or total theft of the vehicle. Accordingly, because plaintiffs' loss of vehicle was a result of a theft, it should be

8

covered by the insurance policy.

¶ 20   State Farm's insurance policy excludes coverage when an insured "voluntarily" relinquishes possession of his or her vehicle.   State Farm contends that plaintiffs voluntarily gave possession of their vehicle to Northington, and because this transfer was voluntary, the loss of vehicle is excluded from coverage.   We disagree.   Plaintiffs' relinquishment of their vehicle involved a theft based on fraud, and, as such, cannot be deemed voluntary.   No actual sales agreement existed between plaintiffs and the purported buyer of their vehicle.   Plaintiffs believed possession of their vehicle was given to a man named Northington in exchange for a cashier's check of $10,500.   Plaintiffs did not voluntarily give possession of their vehicle to a deceptively identified person in exchange for a fraudulent cashier's check.

¶ 21                                        CONCLUSION

¶ 22   For the reasons stated herein, we reverse the judgment of the circuit court of Effingham County and remand with directions to enter judgment for plaintiffs and against defendant on plaintiffs' motion for summary judgment and deny State Farm's motion for summary judgment.


¶ 23   Reversed and remanded with directions.

9

2014 IL App (5th) 130366

NO. 5-13-0366

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ANTHONY CRACKEL and DAVID CRACKEL, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 11-MR-92 |
| STATE FARM INSURANCE COMPANY, | ) ) | Honorable Allan F. Lolie, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**         August 28, 2014

_____

**Justices:**      Honorable Richard P. Goldenhersh, J.

              Honorable Thomas M. Welch, P.J., and
              Honorable Bruce D. Stewart, J.,
              Concur

_____

**Attorney**
**for**
**Appellants**
     Aaron C. Jones, Taylor Law Offices, P.C., 122 East Washington Ave., P.O. Box 668, Effingham, IL 62401

_____

**Attorney**
**for**
**Appellee**
     Dominique N. Seymoure, Reed, Armstrong, Mudge & Morrissey, P.C., 115 N. Buchanan, P.O. Box 368, Edwardsville, IL 62025

_____