FIRST DIVISION
May 8, 2006

No. 1-04-1857

| | |
|---|---|
| ERIC McELMEEL and ELISA McELMEEL, Indiv. and as Independent Adm'r of the Estate of Anthony D. McElmeel, Deceased, | ) Appeal from<br>) the Circuit Court<br>) of Cook County<br>) |
| Plaintiffs-Appellants, | )<br>) |
| v. | ) No. 02 CH 8672<br>)<br>) |
| SAFECO INSURANCE COMPANY OF AMERICA, | ) Honorable<br>) David R. Donnersberger, |
| Defendant-Appellee. | ) Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs Eric McElmeel and his mother, Elisa McElmeel, individually and as the administrator of the estate of her other son, Anthony McElmeel, appeal from a trial court order of summary judgment for defendant Safeco Insurance Company. The trial court determined that plaintiffs could not "stack," or aggregate, automobile insurance coverage to obtain a higher level of coverage for an accident with an uninsured driver. Because we believe the facts of this case are controlled by the supreme court ruling in Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill. 2d 11, 27, 823 N.E.2d 561 (2005), we affirm.

Eric was injured and Anthony was killed in an automobile accident on December 23, 2003. They were passengers in a car driven by Matthew Lounds that was struck by a pickup

1-04-1857

truck driven by Dageberto Nayola, an uninsured driver. Plaintiffs were insured by Safeco with policy limits of $100,000 per person/$300,000 per accident in uninsured motorist coverage and $5,000 in medical payments. Lounds was insured by Allstate under a policy with the same limits of uninsured motorist and medical payments coverage. Allstate paid $100,000 to Eric and $100,000 to the estate of Anthony in uninsured motorist benefits and $5,000 each to Eric and the estate of Anthony for medical expenses. Safeco also paid $5,000 each to Eric and the estate of Anthony for medical expenses.

Plaintiffs had three cars insured by Safeco: a 2000 Hyundai Tiburon, a 1991 Ford Ranger and a 1988 Ford Tempo. The declarations pages of their policy were set up in columns and included:

"Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.

| COVERAGES | 2000 HYUN LIMITS | PREMIUMS | 1991 FORD LIMITS | PREMIUMS |
|---|---|---|---|---|
| LIABILITY: | | | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $ 71.80 | $100,000 Each Person $300,000 Each Occurrence | $  207.50 |
| *** | | | | |
| MEDICAL PAYMENTS | $5,000 | 6.90 | $5,000 | 23.90 |
| UNINSURED AND UNDERINSURED MOTORISTS: | | | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Accident | 33.40 | $100.000 Each Person $300,000 Each Accident" | 33.40 |

The second of the two policy declaration pages provided:

2

1-04-1857

"Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.

| COVERAGES | 1988 Ford Limits | Premiums |
|---|---|---|
| LIABILITY: | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Occurrence | $ 196.00 |
| *** | | |
| MEDICAL PAYMENTS | $5,000 | 22.50 |
| UNINSURED *** MOTORISTS: | | |
| BODILY INJURY | $100,000 Each Person $300,000 Each Accident" | 33.40 |

After the declarations pages, the Safeco policy was divided into Parts A through F. Parts A, B and C addressed "Liability Coverage," "Medical Payments Coverage," and "Uninsured/Underinsured Motorists Coverage," respectively. Each of these three sections contained a clause on "Limit of Liability" that stated, in relevant part: "[t]*he limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages. Emphasis added. Part C also contained this* antistacking clause:

"OTHER INSURANCE

A. For Uninsured Motorists Coverage only:

If there is other applicable similar insurance available under more than one policy or provision of coverage:

1. Any recovery for damages for **bodily injury** sustained by an **insured** may equal but not exceed the higher of the applicable limit for

3

any one vehicle under this insurance or any other insurance.

2.  Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

3.  We will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits."  (Emphasis in original.)

In "Part F  - General Provisions" another antistacking clause provided:

**"TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES**

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto."

Eric and Elisa, as administrator of Anthony's estate, filed a claim with Safeco for $300,000 each in uninsured motorist coverage and $15,000 each in medical payments.  They claimed that the separate limits of coverages for each of the three cars as shown in the columns on the declarations page for each car allowed the benefits to be stacked.  Safeco denied the claims.

Plaintiffs filed an action for a declaratory judgment.  They argued in their amended complaint that because they had three vehicles insured by Safeco, they were entitled to stack the coverages in their Safeco policy.  The parties filed cross-motions for summary judgment.  The trial court granted defendant's motion and denied plaintiffs' motion on May 20, 2004.  Plaintiffs appealed.

1-04-1857

We review plaintiffs' claims *de novo*. Whether an insurance policy prohibits or permits stacking is a legal issue to be reviewed *de novo*. Hobbs, 214 Ill. 2d at 17. An insurance policy is a contract and the general rules of contract interpretation apply. Hobbs, 214 Ill. 2d at 17. "[O]ur primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." Hobbs, 214 Ill. 2d at 17. Unambiguous language will be applied as written unless it violates public policy. Hobbs, 214 Ill. 2d at 17. Ambiguity exists if the language is subject to more than one reasonable interpretation, but we will not strain to find an ambiguity where there is none. Hobbs, 214 Ill. 2d at 17. Policy terms that limit an insurer's liability will be liberally construed in favor of coverage if the policy is ambiguous. Hobbs, 214 Ill. 2d at 17.

Our review of this policy and established legal precedent convinces us that it contains language that has been considered ambiguous. See Hobbs, 214 Ill. 2d at 17. We find three ambiguities. First, it has been held that declarations pages, like those here, that are set out in a column format with multiple listings of coverages are ambiguous and must be interpreted in favor of the insured to allow stacking. See Pekin Insurance Co. v. Estate of Goben, 303 Ill. App. 3d 639, 648-49, 707 N.E.2d 1259 (1999) (the columns on the declarations page for two cars could be read as providing either $500,000 or $1 million in underinsured motorist coverage and the ambiguity allowed the insured to stack benefits); Bruder v. Country Mutual Insurance Co., 156 Ill. 2d 179, 192, 620 N.E.2d 355 1993 ambiguity could be found and stacking could be allowed where a declarations page covered more than one car and used a column format that showed bodily injury liability limits and premiums paid for each car Domin v. Shelby Insurance Co., 326 Ill. App. 3d 688, 689, 761 N.E.2d 746 (2001) (the question of whether uninsured motorist coverage

5

could be stacked "seems to come down to how many times the policy's limits of liability appear on its declarations page").

Second, limits of liability clauses, like those in Parts A, B and C, that incorporate an ambiguous declarations page are tainted by the ambiguity and do not prohibit stacking. See Yates v. Farmers Automobile Insurance Ass'n, 311 Ill. App. 3d 797, 800, 724 N.E.2d 1042 (2000) (a policy was ambiguous where an antistacking clause contradicted the declarations page which could have been read to permit stacking); Janes v. Western States Insurance Co., 335 Ill. App. 3d 1109, 1115, 783 N.E.2d 37 (2001) (an antistacking clause did not erase the ambiguity created by a declarations page that showed coverage and premiums for each of three cars).

Third, a general antistacking clause cannot overcome the ambiguity in the more specific declarations pages of a policy. Skidmore v. Throgmorton, 323 Ill. App. 3d 417, 425-26, 751 N.E.2d 637 (2001) (an ambiguity in a specific provision of a policy cannot be cured by an antistacking clause in a general section of the policy). Here, the antistacking clause with the heading "Two or More Autos Insured; Two or More Auto Policies" is in Part F, "General Provisions." It cannot overcome the ambiguity in the more specific declarations page.

Only one antistacking clause remains in the policy that could cure the ambiguity elsewhere in the policy. We believe that the "Other Insurance" clause in Part C, when read with the policy as a whole, bars stacking.

An Illinois statute allows insurers to bar stacking. The Illinois Insurance Code (Code) expressly authorizes antistacking provisions in motor vehicle insurance policies. 215 ILCS 5 143a-2 5 West 2004 Grzeszczak v. Illinois Farmers Insurance Co., 168 Ill. 2d 216, 229,

*659 N.e.2d 952 1995 .* The statute allows an insurer to set forth:

"policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." 215 ILCS 5/143a-2(5) (West 2004).

A clear and unambiguous antistacking clause can defeat a plaintiff's claim for stacked benefits even where, as here, the plaintiff paid three separate premiums for uninsured motorist coverage for three cars. Menke v. Country Mutual Insurance Co., 78 Ill. 2d 420, 425, 401 N.E.2d 539 (1980). In Grzeszczak, 168 Ill. 2d at 218-19, the supreme court found that although the plaintiff's two policies each contained underinsured motorist coverage, stacking was barred by a clear and unambiguous antistacking clause. In Hobbs, 214 Ill. 2d at 11, the supreme court reversed the judgments in consolidated cases where it had been determined that ambiguity on a declarations page could not be cured by antistacking clauses elsewhere in a policy. Hobbs, 214 Ill. 2d at 27. The court found that a policy need not be deemed ambiguous just because the declarations page does not explicitly answer the question of stacking. Hobbs, 214 Ill. 2d at 23. "The declarations page of an insurance policy is but one piece of the insuring agreement. [Citation.] *Although it contains important information specific to the policyholder, the declarations page cannot address every conceivable coverage issue.* Hobbs, 214 Ill. 2d at 23. "[A]n insurance policy

must be interpreted from an examination of the complete document." Hobbs, 214 Ill. 2d at 23.

See also In re Estate of Striplin, 347 Ill. App. 3d 700, 703, 807 N.E.2d 1255 (2004) (there is no

*per se* rule that multiple limits of coverage creates ambiguity); Pekin Insurance Co. v. Estate of

Ritter, 322 Ill. App. 3d 1004, 1005, 750 N.E.2d 1285 (2001) (coverages and premiums entered **in**

**the columns on the declaration merely showed the amount of coverage for each vehicle and the total premium**

**allotted to that coverage, and any** confusion that could arise as to stacking would be clarified by the

antistacking clause); Frigo v. Motors Insurance Corp., 271 Ill. App. 3d 50, 65, 648 N.E.2d 180

(1995) (stacking was barred where endorsements that unambiguously prohibited stacking of

uninsured motorist coverages were part of the insurance contract). In Willison v. Economy Fire

& Casualty Co., 294 Ill. App. 3d 793, 800, 690 N.E.2d 1073 (1998), an "other insurance" clause

identical to the one here was held to be unambiguous and bar stacking.

Here, the ambiguity in the declarations pages and the antistacking clauses that

incorporate them is resolved by the unambiguous "Other Insurance" clause in Part C. In

interpreting the policy as a whole, we find that any confusion that could arise as to stacking is

clarified by the "Other Insurance" clause.

Plaintiffs make three arguments attacking the "Other Insurance" clause. Plaintiffs first

argue that the "Other Insurance" clause is inapplicable because defendant did not comply with

the Code's requirement that an insured must be given the opportunity to obtain additional

uninsured motorist coverage in an amount equal to the insured's bodily injury limits unless

specifically rejected by the insured. 215 ILCS 5/143a-2(1) (West 2004). An insured who wishes

to reject additional uninsured motorist coverage must sign or initial a space on the insurance

application to effectuate the rejection. 215 ILCS 5/143a-2(2) (West 2004). See Bernier v. Transamerica Insurance Co., 215 Ill. App. 3d 118, 122, 574 N.E.2d 873 (1991) (automobile insurers are required by statute to offer uninsured and underinsured motorist coverages in amounts equal to the insured's bodily injury liability limit).

This argument fails because plaintiff's bodily injury limits and uninsured motorist coverage were identical: $100,000 for each person and $300,000 for each accident or occurrence. Plaintiffs base their argument on their belief that their bodily injury coverage, when stacked, was $300,000 per person. It is on that premise that they contend that the $100,000 per person in uninsured motorist coverage they received was unequal to their bodily injury coverage, resulting in a violation of the Code. As explained earlier in this opinion, stacking was barred by the "Other Insurance" clause and there is no discrepancy between bodily injury and uninsured motorist coverages that would trigger the requirements for rejection of coverage in section 143a-2(2) of the Code (215 ILCS 5/143a-2(2) (West 2004).

Plaintiffs next claim the "Other Insurance" provision is contrary to the Code and its underlying public policy. The terms of an insurance policy are to be applied as written unless they contravene public policy. Menke, 78 Ill. 2d at 423. *Unambiguous provisions which bar stacking of uninsured-motorist coverage are not contrary to public policy and must be enforced as written. Grzeszczak, 168 Ill. 2d at 229.* An "other insurance" clause conforms to public policy if: (1) the insured will not be deprived of uninsured motorist protection, and (2) the insured will receive uninsured motorist coverage up to the limits for which he paid. *Armando v. State Farm Mutual Automobile Insurance Co., 323 Ill. App. 3d 153, 156-57, 751 N.E.2d 582*

1-04-1857

2001. Public policy is maintained where an insured person's coverage selection is never undetermined. Armando, 323 Ill. App. 3d 157. An insured person knows that if the uninsured motorist coverage on a vehicle he does not own is less than the coverage he selected for himself, his insurer will make up the difference. Armando, 323 Ill. App. 3d at 157.

Stacking can contravene public policy by allowing double compensation. Armando, 323 Ill. App. 3d at 157. An insured has attained the benefit of her bargain with her own insurer when she has recovered from another insurer the amount she would have received had the uninsured motorist been insured to the extent required by statute. Armando, 323 Ill. App. 3d at 157. "If the policies were 'stacked,' plaintiff would receive greater compensation by virtue of the fact that the tortfeasor violated the financial responsibility laws of Illinois." Armando, 323 Ill. App. 3d at 157.

Here, plaintiffs were not deprived of uninsured motorist protection. They received $100,000 each for Eric and for Anthony's estate under Lounds' Allstate policy. Before the accident, they had paid defendant premiums for uninsured motorist coverage of $100,000 per person. They were entitled to and did receive the coverage they paid for, but not more. If Allstate had paid less than $100,000 per person, the defendant would have been required to pay plaintiffs the difference. The plaintiffs always were entitled to a determinate amount of coverage. There was no violation of public policy. Plaintiffs argue that an "other insurance" clause was found to be against public policy in Illinois Farmers Insurance Co. v. Cisco, 178 Ill. 2d 386, 393, 687 N.E.2d 607 (1997). There, the court found that a policy violated section 143a-21 of the Code because the insurer had conditioned the uninsured motorist coverage on circumstances

10

outside the insured s control. <u>Cisco</u>, 178 Ill. 2d at 394. See 215 ILCS 5/143a-2(1) (West 2004) (motor vehicle insurance policies must include uninsured motorist coverage in an amount equal to the insured s bodily injury liability limits unless specifically rejected by the insured . See also <u>Armando</u>, 323 Ill. App. 3d at 156 (distinguishing <u>Cisco</u>). The "Other Insurance" clause here, unlike that in <u>Cisco</u>, did not prevent plaintiffs from having uninsured motorist coverage equal to their bodily injury coverage as required by the Code (215 ILCS 5/143a-2(1) (West 2004)).

Finally, plaintiffs argue that the "Other Insurance" provision is itself ambiguous. The argument is without citation to authority. Arguments unsupported by citation to authority will not be considered. See Supreme Court Rule 341(e)(7) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. October 1, 2001) (arguments shall contain citations of authorities in support of an appellant's contentions).

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and McBRIDE, JJ., concur.