916 N.E.2d 1175 (2009)
334 Ill.Dec. 287
Albert J. ABRAM, Individually and as Special Administrator of the Estate of Albert W. Abram, Diane E. Witbeck, and Tonia Tibbets, Individually and as a Special Administrator of the Estate of Cheryl Hanson, Plaintiffs-Appellants,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION a/k/a USAA, Defendant-Appellee.
No. 1-08-1860.
Appellate Court of Illinois, First District, Third Division.
September 30, 2009.
*1177 Flaherty & Youngerman, P.C., of Chicago (Michael Flaherty and Stephen D. Sharp, of counsel), for Appellants.
Schiff Hardin, LLP, of Chicago (Marci A. Einstein and Paula M. Ketcham, of counsel), for Appellee.
Justice QUINN delivered the opinion of the court:
Plaintiffs, the adult children and administrators of the estates of Albert W. Abram and Cheryl Hanson (the Abrams), appeal from an order of the circuit court of Cook County dismissing their declaratory judgment action against defendant, United States Automobile Association (USAA), pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) and denying plaintiffs' cross-motion for summary judgment. The trial court determined that plaintiffs could not "stack" or aggregate coverage under the Abrams' automobile insurance policy in order to obtain a higher level of coverage after the Abrams were killed in a motor vehicle accident with an uninsured driver, and that the Abrams' $2 million personal umbrella policy (PUP) did not provide uninsured motorist coverage (UM). As a result, the trial court found that plaintiffs' recovery was limited to the $500,000-per-accident UM liability limit of the Abrams' auto policy, which defendant had already paid. For the reasons set forth below, we affirm the order of the circuit court.

I. BACKGROUND
On April 23, 2005, the Abrams, residents of Lake Forest, Illinois, were killed in Louisiana in a motor vehicle accident caused by an uninsured driver. At the time of the accident, the Abrams carried an auto insurance policy (auto policy) issued by USAA on the vehicle they were driving, a 2003 GMC Envoy (GMC). Several months before the accident, the Abrams had renewed that policy for the policy period from January 27, 2005, through July 27, 2005. In addition to providing coverage for the Abrams' GMC, the auto policy also covered their second car, a 1991 BMW. However, the policy provided different coverage for each vehicle. On the GMC, the policy included liability (bodily injury and property damage), medical payments, uninsured motorist (bodily injury), underinsured motorist (bodily injury), and physical damage (comprehensive loss, collision loss, and rental reimbursement) coverage. The UM coverage for the GMC was capped at $300,000 per person or $500,000 per accident, the same as the liability for bodily injury.
For the BMW, however, the declarations page of the policy shows that it provided only physical damage coverage for comprehensive losses, such as loss by theft, fire, flood or vandalism, and no collision-related coverages at all. Defendant contends that on December 4, 2004, Albert Abram informed USAA that he and his wife would be spending the winter in Arizona and placing the BMW in storage in Illinois until the following May and, therefore, asked that the coverage on the BMW be reduced to include only comprehensive loss *1178 coverage. The declarations page of the policy expressly states that the following coverages were not provided on the BMW: liability, medical payments, extended benefits coverage, uninsured motorist, underinsured motorist, collision, rental reimbursement, towing and labor. The declarations page also shows that USAA charged the Abrams a premium for UM coverage on the GMC but did not charge such a premium on the BMW.
In addition to their auto policy, the Abrams had a personal umbrella policy (PUP) with USAA for the policy period from July 27, 2004, through July 27, 2005. The PUP provided excess coverage up to a limit of $2 million per occurrence.
Following the accident, USAA paid the plaintiffs $500,000 in UM benefits under the auto policy, which defendant contends is the extent of its liability.
On June 29, 2007, plaintiffs filed a complaint in the circuit court of Cook County against defendant seeking additional payment of UM benefits. Plaintiffs' complaint contended that although the auto policy did not expressly provide UM coverage for the BMW, the court should imply such coverage in the amount of $300,000 per individual and $500,000 per accident, equal to the bodily injury (BI) and UM limits of liability on the GMC; that the PUP provided excess UM coverage in the amount of $2 million on the GMC and the BMW; and that because the antistacking provisions in the policy do not apply when two people who are "covered persons" under the policy are killed in one accident, plaintiffs should be permitted to stack the UM coverage on the auto policy and the UM coverage on the PUP. Therefore, plaintiffs asked the trial court to: (1) reform the underlying policy and the PUP to expressly state that USAA provided UM limits of liability for the BMW in the amount $2.3 million per person/$2.5 million per accident; (2) reform the PUP to expressly state that USAA provided UM limits of liability on the GMC in the amount of $2.3 million per person/$2.5 million per accident; (3) reform the underlying policy, the PUP, and the rejection/selection form of the policy to expressly state that any purported antistacking provisions in the policy have no application to situations where two "covered persons" are killed in an occurrence; and (4) award judgment in plaintiffs' favor in the amount of $5 million, plus costs and expenses.
Defendant filed a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) and plaintiffs filed a cross-motion for summary judgment. Following a hearing, the trial court granted defendant's section 2-615 motion to dismiss with prejudice and denied plaintiffs' cross-motion for summary judgment. In so doing, the court found that the plaintiffs could not recover under the PUP because (1) the PUP did not provide uninsured motorist coverage; (2) the PUP only applies to amounts that the insured becomes legally obligated to pay; and (3) the PUP does not apply to injury to any insured. The court further found that plaintiffs' recovery for this occurrence is limited to $500,000 pursuant to several antistacking provisions of the auto policy, which the court found were "not ambiguous or inconsistent in regard to these matters." Plaintiffs now appeal.

II. ANALYSIS

A. Standard of Review
The granting of a motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) is reviewed under the de novo standard of review. Compton v. Country Mutual Insurance Co., 382 Ill.App.3d 323, *1179 325, 320 Ill.Dec. 734, 887 N.E.2d 878 (2008). Summary judgment rulings are also subject to de novo review. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.2d 90, 102, 180 Ill.Dec. 691, 607 N.E.2d 1204 (1992).
An insurance policy is a contract, and the general rules of contract construction apply. Hobbs v. Hartford Insurance Co. of the Midwest, 214 Ill.2d 11, 17, 291 Ill.Dec. 269, 823 N.E.2d 561 (2005). "[O]ur primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561. Unambiguous language will be applied as written unless it violates public policy. Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561. Policy terms that limit an insurer's liability will be liberally construed in favor of coverage, but only if the policy is ambiguous. Ambiguity exists in an insurance contract if the language is subject to more than one reasonable interpretation, but we will not strain to find an ambiguity where none exists. Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561. If two or more clauses within the policy conflict or are inconsistent, then the clause affording greater coverage will govern. Yates v. Farmers Automobile Insurance Ass'n, 311 Ill.App.3d 797, 800, 244 Ill.Dec. 154, 724 N.E.2d 1042 (2000).
On appeal, plaintiffs contend that (1) because USAA did not offer the Abrams UM coverage on the BMW, the law implies such coverage in an amount equal to the $300,000/$500,000 BI and UM coverage on the Abrams' GMC; (2) the policy does not preclude stacking of UM coverage when two covered parties are killed in one accident with an uninsured driver and, therefore, they are entitled to $500,000 in UM coverage for each vehicle; (3) the Abrams' PUP provides $2 million in excess UM coverage; and (4) the policy does not preclude stacking of UM coverage under the PUP, and therefore, plaintiffs are entitled to $2 million in excess UM coverage for each vehicle. Because the Abram's auto policy expressly precluded stacking and the PUP did not provide UM coverage, we find that the trial court did not err in determining that the plaintiffs were only entitled to $500,000 under the UM coverage of the auto policy, which defendant has already paid.

B. Plaintiffs are Precluded from Stacking UM Coverages on the Auto Policy
Plaintiffs contend that although the policy's declaration page shows that the Abrams did not have UM or BI coverage on their BMW, such coverage in the amount of $300,000 per individual/$500,00 per incident should be implied. Further, plaintiffs assert, they should be permitted to stack the UM coverages and recover $500,000 on each insured vehicle.
The trial court did not address whether there was UM coverage on the BMW, finding instead that the plaintiffs' recovery was limited to $500,000 pursuant to the antistacking provisions of the auto policy. In arguing that this court should find that such coverage is implied, plaintiffs raise three arguments. Plaintiffs first assert that a failure to provide BI and UM coverage on the BMW is inconsistent with representations made in the auto policy and the UM Brochure that USAA provided to the Abrams and that such inconsistencies should be construed in a manner most favorable to the Abrams. Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561 ("policy terms that limit an insurer's liability will be liberally construed in favor of coverage * * * [but] only * * * when the policy is ambiguous"). Plaintiffs point to provisions in the auto policy and the UM brochure that state, in part, that *1180 "Bodily Injury Liability (BI) limits must be the same for each vehicle insured for these coverages," that the "limits [of UM coverage] must be the same for each vehicle insured for these coverages," and that "Uninsured Motorist Bodily Injury Coverage [UMBI] * * * is mandatory with right of reduction to Financial Responsibility Limits. If you wish to reduce UMBI or select different limits, please complete sign and return the Rejection/Selection form * * *. [UMBI] has been issued with limits equal to your BI Liability Coverage limits." Plaintiffs assert that these statements would lead an insured to think that each vehicle had separate BI and UM limits of $300,000 and $500,000, and therefore, such coverage should be implied.
Second, plaintiffs contend that because the Abrams never requested a reduction in UM coverage on the BMW in the manner required under section 143a-2(2) of the Illinois Insurance Code (215 ILCS 5/143a-2(2) (West 2006)), by submitting a request in writing to USAA, the BMW retained the UM coverage it had before the policy was renewed. Section 143a-2(2) provides, in part, that "Any named insured or applicant may reject additional uninsured motorist coverage in excess of the limits set forth in Section 7-203 of the Illinois Vehicle Code by making a written request for limits of uninsured motorist coverage which are less than bodily injury liability limits or a written rejection of limits in excess of those required by law." 215 ILCS 5/143a-2(2) (West 2006). Since the Abrams did not make such a written request, plaintiffs contend, the BMW, which had UM coverage before the policy was renewed, remained covered despite USAA's assertion that the Abrams verbally requested a suspension of coverage.
Third, plaintiffs contend that issuing a policy to the Abrams that did not provide UM coverage on the BMW for the entire policy period violated section 143a-2(1) of the Illinois Insurance Code (215 ILCS 5/143a-2(1) (West 2006)) and section 7-203 of the Illinois Vehicle Code (625 ILCS 5/7-203 (West 2006)). Section 143a-2(1) provides in relevant part:
"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State with respect to any motor vehicle designed for use on public highways and required to be registered in this State unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured as provided in paragraph (2) of this Section. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7-203 of The Illinois Vehicle Code." 215 ILCS 5/143a2(1) (West 2006).
Section 7-203 of the Illinois Vehicle Code provides in relevant part:
"[E]very such policy or bond is subject, if the motor vehicle accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than $20,000 because of bodily injury to or death of any one person in any one motor vehicle accident and, subject to said limit for one person, to a limit of not less than $40,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident, and, if the motor vehicle accident has resulted in injury to or destruction of property, to a limit of not less than $15,000 because of injury to or destruction of property *1181 of others in any one motor vehicle accident." 625 ILCS 5/7-203 (West 2006).
Plaintiffs argue that even if the Abrams had effectively suspended BI and UM coverage on the BMW until May 2005, the policy period was effective from January 27, 2005, to July 27, 2005. Therefore, plaintiffs contend that because USAA issued a policy that would not provide BI and UM coverage from May 2005 to July 2005, a period of time when the Abrams could be using the BMW on the public highways, USAA violated section 143a-2(1) of the Illinois Insurance Code. The remedy for defendant's failure to offer such coverage, plaintiffs assert, is to imply BI and UM coverage on the BMW in the amounts equal to the coverage on the GMC, since the policy requires that both vehicles have the same UMBI limits. Jensen v. USAA Property & Casualty Insurance Co., 246 Ill.App.3d 66, 73, 185 Ill.Dec. 676, 614 N.E.2d 1361 (1993) ("[t]he remedy for an inadequate offer of underinsured motorist coverage is to reform the policy to provide underinsured motorist coverage equal to the insured's bodily injury liability limits if, also, no proper offer of uninsured motorist coverage was made").
Because we find, as addressed below, that the auto policy unambiguously precludes stacking of coverage, USAA is, as the trial court found, only liable to plaintiffs in the amount of $500,000, the UM-per accident limit on the GMC, regardless of whether there was UM coverage on the BMW. Therefore, we need not decide whether UM coverage should be implied under the circumstances presented in this case.
The parties identify five antistacking provisions in the auto policy; three are UM-specific and two are general antistacking provisions. Defendant argues that any one of these provisions would preclude plaintiffs from stacking UM coverages, while plaintiffs contend that the language of these provisions does not preclude stacking under the circumstances of this case, where two insureds are killed in one car accident. However, before addressing the policy's antistacking provisions, we will address plaintiffs' argument that when an insurance company charges insureds two separate UM premiums for two vehicles, and the insureds are subsequently both killed in an accident involving an uninsured motorist, the insurer must pay the insureds the limit of UM coverage for each vehicle insured. Plaintiffs contend that USAA provided UM coverage on an "Each Car" basis by charging separate premiums for each vehicle and that the policy also provided UM coverage to family members under each covered vehicle regardless of whether they were occupying the vehicle when they were killed. Plaintiffs assert that if only one vehicle's UM limit applied when both insureds are injured or killed in an accident with an uninsured driver, there would be no reason to charge a premium for UM coverage on multiple vehicles.
Plaintiffs rely on our supreme court's decision in Bruder v. Country Mutual Insurance Co., 156 Ill.2d 179, 189 Ill.Dec. 387, 620 N.E.2d 355 (1993), for support. In Bruder, the plaintiff, who was pregnant, was injured when the car she was driving was struck from behind by an uninsured motorist. Plaintiff and her daughter, who was born prematurely following the accident, sought to recover under the UM coverage on an auto insurance policy issued by defendant and to stack the UM coverages from a separate business automobile policy, also issued by defendant to plaintiff's husband, for two pickup trucks he used for his business. The antistacking provision in the business automobile policy stated that "`The most we will pay for all damages resulting from bodily injury to *1182 any one person caused by any one accident is the limit of Bodily Injury shown in the declarations page for "Each Person."'" Bruder, 156 Ill.2d at 189, 189 Ill.Dec. 387, 620 N.E.2d 355. First, the court found that although the plaintiff's husband was the named insured on the business automobile policy, as the spouse of the named insured, it was also issued to plaintiff within the contemplation of the antistacking provision. Bruder, 156 Ill.2d at 188, 189 Ill.Dec. 387, 620 N.E.2d 355. The court found that when that provision was read in conjunction with the policy's declaration page, wherein the $100,000 limit on the UM coverage was set forth only one time, "[t]he only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury occasioned to each person insured no matter how many vehicles are listed in the column arrangement and no matter how many premiums are paid." Bruder, 156 Ill.2d at 193-94, 189 Ill.Dec. 387, 620 N.E.2d 355.
However, the plaintiffs point to a statement the Bruder court made in dicta that if a declarations page in an insurance policy lists the UM coverage in two separate columns, "It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. * * * There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two * * * coverage amounts were afforded." Bruder, 156 Ill.2d at 192, 189 Ill.Dec. 387, 620 N.E.2d 355.
Plaintiffs contend that this supports their argument for recovery under the UM coverage on each of the Abrams' vehicles. However, as the Bruder court held, where the UM limits of $300,000/$500,000 are listed only once on the declarations page, as they were in the case before this court, the only reasonable interpretation is that the policy provides only $500,000 of liability for per accident regardless of how many vehicles are listed in the column arrangement and no matter how many premiums are paid. Despite plaintiffs' assertion that multiple premiums should lead to recovery under both vehicles, the Abrams did not pay multiple premiums for UM/UIM coverage. As shown on the declarations page, USAA only charged a premium for UM/UIM coverage on the GMC, not on the BMW.
Plaintiffs' reliance on Johnson v. Davis, 377 Ill.App.3d 602, 318 Ill.Dec. 290, 883 N.E.2d 521 (2007), is similarly misplaced. In Johnson, this court found an auto insurance policy to be ambiguous and construed the policy in favor of the insured where the policy's antistacking clause stated that the limits of liability shown in the declarations page was the maximum limit of liability and the declarations page then showed liability limits of $50,000 per person and listed those limits four separate times and showed four separate premiums. Johnson, 377 Ill.App.3d at 610, 318 Ill.Dec. 290, 883 N.E.2d 521. While Johnson would likely provide support for plaintiffs' argument if the declarations page had listed liability limits on each vehicle and charged separate premiums for each that was simply not the case here where the declarations page of the Abrams' policy showed that a premium for the BI and UM liability limits of $300,000/$500,000 was charged only for the GMC. Therefore, plaintiffs' argument that they should be permitted to recover $500,000 in UM coverage on the GMC and the BMW because separate premiums were paid for each vehicle is without merit.
We now turn to the plaintiffs' contention that the antistacking provisions *1183 in the auto policy do not preclude stacking coverage when two "covered persons" under the policy are killed in one accident. In general, antistacking clauses do not contravene public policy. Grzeszczak v. Illinois Farmers Insurance Co., 168 Ill.2d 216, 229, 213 Ill.Dec. 606, 659 N.E.2d 952 (1995). The Illinois Insurance Code expressly authorizes the use of antistacking provisions in motor vehicle insurance policies. 215 ILCS 5/143a-2(5) (West 2006); Grzeszczak, 168 Ill.2d at 229, 213 Ill.Dec. 606, 659 N.E.2d 952. Section 143a-2(5) provides:
"Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." 215 ILCS 5/143a2(5) (West 2006).
A clear and unambiguous antistacking clause can defeat a plaintiff's claim for stacked benefits, even where the plaintiff has paid separate premiums for uninsured motorist coverage for separate cars. Menke v. Country Mutual Insurance Co., 78 Ill.2d 420, 425, 36 Ill.Dec. 698, 401 N.E.2d 539 (1980). For instance, in Grzeszczak, our supreme court found that although the plaintiff's two policies each contained underinsured motorist coverage (UIM), stacking was barred by a clear and unambiguous antistacking clause. Grzeszczak, 168 Ill.2d at 218-19, 213 Ill. Dec. 606, 659 N.E.2d 952. However, ambiguous policy terms that limit an insurer's liability will be construed in favor of coverage. Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561.
USAA identifies five provisions in Abrams' auto policy that it argues unambiguously prohibit stacking of uninsured motorist coverage. Plaintiffs focus only on the three UM-specific antistacking provisions on the grounds that if the more specific antistacking provisions are deemed to be ambiguous, the general antistacking provisions are irrelevant. Skidmore v. Throgmorton, 323 Ill.App.3d 417, 426, 256 Ill.Dec. 247, 751 N.E.2d 637 (2001) (a general antistacking clause cannot overcome the ambiguity in a more specific declarations page of a policy). We will, however, address all five antistacking provisions in the policy, focusing first on those that are UM-specific and then on the two general antistacking provisions.
Plaintiffs contend that in the circumstances presented in this case, where two covered parties are killed in one accident, the UM/UIM-specific, antistacking provisions of the policy do not prevent them from obtaining the $300,000/$500,000 UM/UIM limits implied for the BMW in addition to the $300,000/$500,000 UM/UIM limits that USAA has already paid on the GMC. The first UM/UIM-specific, antistacking provision of the policy addressed by plaintiffs provides as follows:
"LIMIT OF LIABILITY
For [bodily injury] sustained by any one person in any one accident, our maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown in the Declarations under any one vehicle for UM Coverage or for UIM Coverage for `each person', whichever is applicable. Subject to this limit for 'each person', the limit of liability shown in the Declarations for `each accident' for UM Coverage *1184 or for UIM Coverage is our maximum limit of liability for all damages for [bodily injury] resulting from any one accident. These limits are the most we will pay regardless of the number of:
1. Covered persons;
2. Claims made;
3. Vehicles or premiums shown in the Declarations;
4. Premiums paid; or
5. Vehicles involved in the accident."
Defendant asserts that this antistacking provision is essentially the same as the antistacking provision at issue in Hobbs, 214 Ill.2d 11, 291 Ill.Dec. 269, 823 N.E.2d 561, and that this court should find, as our supreme court did in Hobbs, that it unambiguously prohibits stacking.
In Hobbs, the plaintiff was involved in a motor vehicle accident and sustained injuries exceeding $200,000. The plaintiff settled claims against the driver of the other vehicle for the driver's policy limits of $50,000. Plaintiff carried underinsured motorist coverage for two vehicles under a single policy issued by Hartford Insurance Company in the amount of $100,000 per person/$300,000 per occurrence. Hartford paid plaintiff $50,000, which represented the difference between the $100,000-per-person underinsured motorist coverage plaintiff had and the $50,000 plaintiff received from the other driver's insurer. Plaintiff filed a declaratory judgment action in the circuit court of Madison County arguing that the Hartford policy was ambiguous as to the limits of the UIM coverage and that she should be allowed to stack the UIM coverage for her two vehicles, producing a per-person limit of $200,000. The trial court found that the declarations page of the Hartford policy created an ambiguity that must be construed in favor of the plaintiff. The appellate court affirmed but our supreme court reversed.
The antistacking clause in issue in Hobbs, was, as defendant asserts, very similar to the antistacking clause in the instant case, stating as follows:
"`LIMIT OF LIABILITY
The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injures sustained by any one person in any one accident. * * * This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations;
4. Vehicles involved in the accident.'" Hobbs, 214 Ill.2d at 18, 291 Ill.Dec. 269, 823 N.E.2d 561.
Our supreme court held that this antistacking provision, when read in conjunction with the policy's declarations page, unambiguously limited the plaintiffs to a $100,000 recovery, the single person limit of liability listed on the declarations page. Hobbs, 214 Ill.2d at 27, 291 Ill.Dec. 269, 823 N.E.2d 561. Defendant asserts that this court should apply the reasoning in Hobbs to this nearly identical antistacking provision and hold that it is unambiguous and enforceable.
Plaintiffs contend, however, that Hobbs is distinguishable from the case before this court in one key respect. In the instant case, plaintiffs note, two covered persons were killed in an accident with the uninsured driver, a situation not addressed in Hobbs, where there was only one claim involving one covered person. Plaintiffs assert that the language of this antistacking provision does not preclude Albert Abrams from receiving the per-person limit *1185 of $300,000 in UM coverage under the GMC and another $200,000 pursuant to the per-accident limit on the BMW, and Cheryl Hanson from receiving the $300,000 per-person limit of UM coverage for the BMW and another $200,000 pursuant to the per-accident limit on the GMC. Plaintiffs also assert that the opening phrase of this antistacking provision, which reads, "For BI sustained by any one person in any one accident" supports this argument that the antistacking provision only applies to any one person injured in any one accident and does not preclude an injured person from recovering UM limits up to the per person UM limits under any one vehicle, subject to capping of that person's total recovery and the per accident limit of the other vehicle. (Emphasis added.)
Defendant contends that a recent appellate court decision, Progressive Premier Insurance Co. v. Cannon, 382 Ill.App.3d 526, 321 Ill.Dec. 525, 889 N.E.2d 790 (2008), addressing an antistacking provision in an insurance policy covering two jet skis, provides support for the argument that antistacking provisions apply when more than one covered person is injured or killed in an accident. In Progressive, defendant was injured when a jet ski she was a passenger on collided with another jet ski. Both jet skis were owned by a third party who had them insured under a single policy that limited the per-person bodily injury coverage to $100,000 and included an antistacking provision similar to the one in this case, limiting liability regardless of the number of "`covered watercraft,'" "`insured persons,'" or "`watercraft involved in an accident.'" Progressive, 382 Ill.App.3d at 527, 321 Ill.Dec. 525, 889 N.E.2d 790. This court found that although two covered watercraft were involved in the accident, the defendant could only recover $100,000 from the insurer because "when read in conjunction with the antistacking provision, the $100,000 limit for bodily injury coverage for `each person' as stated on the declarations page, applies regardless of the number of covered watercraft, insured, or premiums paid." Progressive, 382 Ill.App.3d at 529, 321 Ill.Dec. 525, 889 N.E.2d 790. Defendant asserts that the same reasoning should apply here to preclude stacking even though more than one covered person was injured.
We agree with plaintiffs that Progressive does not address the situation presented in this case, where two covered parties are parties are killed in one accident; however, applying the plain language of the antistacking provision, as this court did in Progressive, leads to the same conclusion; that stacking is not permitted under these circumstances. When the first phrase of the antistacking provision in the Abrams' auto policy is read in conjunction with the second and third phrases, it is clear that the limit of liability shown on the declarations for each accident is the maximum limit of liability for all damages for BI resulting from one accident, regardless of the number of "covered persons" or "claims made" under the policy. Although two insureds were killed in the case before this court, because the auto policy limits coverage to $500,000 per accident, regardless of the number of "covered persons" involved, we find that plaintiffs may not stack the UM coverage in this policy.
Plaintiffs also contend that the two other UM specific antistacking provisions in the policy do not prohibit each of the named insureds from recovering the per person UM benefits on one covered vehicle and the remaining per accident UM limit on the other covered vehicle. First, plaintiffs point to USAA's UM/UIM brochure, which states as follows:
"Stacking of UM and UIM Coverages
You are not able to stack UM or UIM Coverage on any vehicle on this policy. *1186 This means the most we will pay under UM or UIM Coverage is the vehicle coverage limit shown for that vehicle on the Policy Declarations Page. This limit cannot be added to any other UM or UIM coverage on this policy."
Plaintiffs assert that payment of the $500,000 "each accident" limit does not violate the provision that "the most we will pay under UM or UIM Coverage is the vehicle coverage limit for that vehicle on the Policy Declarations Page." (Emphasis added.) Plaintiffs argue that where, as here, two covered persons are injured in the same accident and the auto policy provides UM coverage limits for two vehicles whether or not those vehicles are involved in the accident, each vehicle's $500,000 "each accident" limits are available without stacking UM coverage on any vehicle. We disagree. This provision plainly states, in unambiguous language, that "You are not able to stack UM or UIM Coverage on any vehicle on this policy." Clearly, even if the BMW had UM coverage, this provision would preclude the insured from stacking that coverage with the UM coverage on the GMC.
Lastly, plaintiffs contend that the policy's third UM/UIM specific antistacking provision, the policy's "other insurance" clause, also only applies to any recovery on an any one person basis rather than to all recoveries in an accident. The "other insurance" clause states:
"If there is other applicable insurance for UM or UIM Coverage available under one or more policies or provisions of coverage:
1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."
Plaintiffs again assert that this provision does not prohibit each covered person from being paid UM/UIM benefits up to the per-person UM/UIM limits of $300,000 under one covered vehicle's UM/UIM coverage and being paid the per-accident balance of the UM/UIM limits under the other vehicle's UM/UIM coverage when multiple vehicles are covered and multiple covered persons are injured or killed due to the fault of an uninsured motorist.
Defendant contends, however, that this court relied on a nearly identical antistacking provision in McElmeel v. Safeco Insurance Co. of America, 365 Ill.App.3d 736, 303 Ill.Dec. 201, 851 N.E.2d 99 (2006), to prevent a plaintiff from stacking coverage. In McElmeel, the "other insurance" provision read, in part, as follows:
"A. For Uninsured Motorist Coverage only:
If there is other applicable similar insurance available under more than one policy or provision of coverage:
1. Any recovery for damages for bodily injury sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance." (Emphasis omitted.) McElmeel, 365 Ill.App.3d at 738, 303 Ill.Dec. 201, 851 N.E.2d 99.
Plaintiffs in McElmeel brought a declaratory judgment action against the insurer, seeking to stack the UM coverage for three vehicles. The declarations pages of the policy that set out multiple listings of coverage in a column format have been found to be ambiguous and must be interpreted in favor of the insured to allow stacking. McElmeel, 365 Ill.App.3d at 739, 303 Ill.Dec. 201, 851 N.E.2d 99, citing Pekin Insurance Co. v. Estate of Goben, 303 Ill.App.3d 639, 648-49, 236 Ill.Dec. 689, 707 N.E.2d 1259 (1999). However, this *1187 court went on to find that the ambiguity in the declarations pages and the antistacking clauses that incorporated them was resolved by the unambiguous "other insurance" clause. "In interpreting the policy as a whole, we find that any confusion that could arise as to stacking is clarified by the `Other Insurance' clause," this court held. McElmeel, 365 Ill.App.3d at 741, 303 Ill. Dec. 201, 851 N.E.2d 99.
There are two other general antistacking provisions in the policy. One states that: "The limits shown may be reduced by the policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy." The other states that: "If this policy and any other auto insurance policy we issued to you apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy." Plaintiffs assert that these antistacking provisions cannot cure an ambiguity in the declarations page. However, the declarations page of the Abrams' auto policy is not ambiguous; it limits recovery to $500,000 per accident, and pursuant to the antistacking provisions addressed above, that is the maximum limit of UM liability resulting from one accident, regardless of the number of "covered persons" or "claims made" under the policy. Therefore, the trial court did not err in finding that the plaintiffs could not stack UM coverage under the terms of the auto policy.

C. Personal Umbrella Policy Did Not Provide Uninsured Motorist Coverage
Plaintiffs next contend that the Abrams' PUP provides $2 million in excess UM coverage to pay compensatory damages that a covered person is entitled to recover from an uninsured motorist. Plaintiffs assert that the policy is ambiguous as to whether or not the PUP provides excess UM coverage and, therefore, it must be construed in favor of coverage. Hobbs, 214 Ill.2d at 17, 291 Ill.Dec. 269, 823 N.E.2d 561 ("policy terms that limit an insurer's liability will be liberally construed in favor of coverage * * * [but] only * * * when the policy is ambiguous"). Plaintiffs contend that the ambiguity regarding UM coverage in the PUP stems from four sections of the policy: (1) the UM brochure and selection/rejection form; (2) the PUP's declarations page; (3) the PUP's failure to define "first party insurance coverage"; and (4) the PUP's exclusions. We will address each section in turn.

1. Ambiguity of UM Brochure and Selection/Rejection Form
Plaintiffs first contend that the PUP, when viewed as a whole, along with the UM/UIM brochure and the UM/UIM selection/rejection form, which were provided to the Abrams, create an ambiguity as to whether or not it included UM/UIM coverage. The brochure informs insureds that UM/UIM coverage is mandatory and that "Uninsured Motorist Bodily Injury Coverage (UMBI) * * * has been issued with limits equal to your BI Liability coverage limits." The selection/rejection form in the brochure permitted the Abrams to make a selection from a list of UM/UIM coverage limits ranging from a minimum of $20,000 per person/$40,000 per occurrence up to $1 million per person/$1 million per occurrence. Plaintiffs assert that this language in the brochure and selection/rejection form could lead an insured to believe that since their BI liability limit when coupled with their excess coverage under the PUP was $2.5 million, their UM/UIM limits were also at least $2.5 million.
We disagree. Several provisions of the PUP plainly state that UM coverage *1188 is not provided by the policy. The first and clearest exclusion of UM coverage is on the first page of the policy, which states, "This policy provides no first party insurance coverage (including but not limited to, any uninsured motorist coverage, underinsured motorist coverage, personal injury protection or any medical payments coverage)." This provision unambiguously informs the insured that no first party coverage, including UM coverage, is provided.
In addition, the first paragraph of the PUP's exclusions states "This insurance does not apply to 1. Bodily injury or personal injury to any insured," while the PUP's coverage language, describing what the policy will cover, makes it clear that the PUP is limited to excess liability coverage by stating that "[USAA] will pay for damages an insured becomes legally obligated to pay in excess of the [limits of the underlying policies]." Therefore, as defendant asserts, the PUP provided a maximum of $2 million in excess coverage if the Abrams had become liable to a third party by causing an accident, but did not provide excess UM coverage to the Abrams for their own injuries. In light of these provisions clearly stating that the PUP does not provide UM/UIM coverage and the fact that neither the selection/rejection form nor the UM Brochure refer to the PUP, we find that the PUP unambiguously excluded UM coverage from that policy.
Further, limiting an umbrella policy's coverage to excess third-party liability and excluding excess UM/UIM coverage is consistent with Illinois law and public policy. First, section 5/143a-2(5) of the Illinois Insurance Code permits insurers to issue umbrella policies that exclude UM/UIM coverage, stating:
"Insurers providing liability coverage on an excess or umbrella basis are neither required to provide, nor are they prohibited from offering or making available coverages conforming to this Section [which otherwise requires motorists to carry and insurers to offer certain minimum amounts of both third party liability and first party UM/UIM coverage] on a supplemental basis." 215 ILCS 5/143a-2(5) (West 2006).
In addition, before section 143a-2 was added to the Insurance Code, this court held that an umbrella policy may exclude excess insurance for uninsured motorist coverage. Hartbarger v. Country Mutual Insurance Co., 107 Ill.App.3d 391, 394-95, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982). In Hartbarger, this court addressed, as a matter of first impression, whether an umbrella policy will be construed as including UM coverage. In rejecting the plaintiff's claim for UM coverage under an umbrella policy, the Hartbarger court pointed out the differences between an umbrella policy and an automobile policy, stating that "[i]t is obvious that the present umbrella policy was intended by both parties to protect the insured against excess judgments, and the risks and premiums were calculated accordingly. To require that policy to furnish uninsured motorist coverage would work a substantial revision of that policy." Hartbarger, 107 Ill.App.3d at 396, 63 Ill. Dec. 42, 437 N.E.2d 691. Similar distinctions between an umbrella policy and an underlying automobile policy were discussed in Cincinnati Insurance Co. v. Miller, 190 Ill.App.3d 240, 137 Ill.Dec. 755, 546 N.E.2d 700 (1989), wherein this court stated that "the intended purpose of umbrella policy coverage is to protect an insured from judgments in favor of a claimant against the insured in an amount greater than the auto liability policy * * *. We construe the word `liability' in these insurance policies to mean liability for injuries or other losses to persons other than the insured. If an insurance policy contained *1189 no express uninsured or underinsured coverage provision, the insured could not recover on his own liability policy." Cincinnati Insurance Co., 190 Ill.App.3d at 247, 137 Ill.Dec. 755, 546 N.E.2d 700.
In addressing this issue, the trial court stated, that "[a]ny statements by the Defendant indicating that bodily injury coverage has been issued equal to uninsured motorist coverage absent reduction must be read to apply to primary insurance only." Pursuant to the holdings in Hartbarger and Cincinnati Insurance Co., we agree and find that PUP did not provide excess UM coverage.

2. PUP Is Scheduled Above all Coverages
Plaintiffs next assert that the PUP's declarations page implicitly provides UM/UIM coverage because it schedules the excess $2 million coverage above the entire automobile policy, including the UM/UIM coverage, rather than solely above the liability portion of the policy. Plaintiffs contend that if USAA wanted to carve out all of the UM and UMBI coverage from the PUP, it should have scheduled the PUP only above the liability section and should have expressly stated that the PUP does not provide UM or UIM coverage.
Defendant asserts that the PUP identifies the underlying coverage, over which the PUP provides excess coverage as "Motor Vehicle Liability." (Emphasis added.) As previously noted, this court has construed "liability" to mean "liability for injuries or other losses to persons other than the insured." Cincinnati Insurance Co., 190 Ill.App.3d at 247, 137 Ill.Dec. 755, 546 N.E.2d 700. Furthermore, in Cincinnati Insurance Co., this court found that UM coverage was excluded from the umbrella policy where the umbrella policy listed as underlying auto policy coverage only the bodily injury liability for automobiles owned or operated by the insured and made no reference to uninsured motorist coverage for bodily injury suffered by the insured. Cincinnati Insurance Co., 190 Ill.App.3d at 248, 137 Ill.Dec. 755, 546 N.E.2d 700. Similarly, in this case, while the PUP is scheduled above the entire automobile policy, it states that the underlying coverage is for "motor vehicle liability," and therefore, does not provide excess coverage for injuries suffered by the insured.
Plaintiffs contend that although the policy generally provides that UM/UIM coverage is only provided when a third-party uninsured motorist is at fault, the policy would permit UM/UIM coverage in a "first party" situation if the accident was the fault of another "covered person." Plaintiffs assert that because the policy excludes "UM or UIM Coverage for BI sustained by a covered person while occupying a vehicle owned by you or any family member which is not insured for UM or UIM under this policy," the policy would necessarily provide first party UM or UIM coverage for bodily injuries sustained by a covered person while occupying or when struck by an automobile owned by the insured or the insured's family member which is insured for UM or UIM. However, because that situation is not before this court and because the PUP clearly excludes UM/UIM coverage, we need not address this issue.

3. Whether "First Party Insurance Coverage" Is Adequately Defined
Next, plaintiffs argue that the PUP is ambiguous because although it states that it "provides no first party insurance coverage," the term "first party insurance coverage" is not defined in the PUP or the policy. Furthermore, plaintiffs contend that no policy provision addresses whether each of the three types of UM coverage-for *1190 damages recoverable from the operator of the underinsured vehicle, bodily injury damages-or property damages, is first-party coverage.
We disagree. As discussed above, the PUP clearly defined "first party insurance coverage" by stating that "This policy provides no first party insurance coverage (including, but not limited to, any uninsured motorist coverage, underinsured motorist coverage, personal injury protection or any medical payments coverage)." (Emphasis added.) Defendant cites cases from other jurisdictions to assert that it is universally recognized that UM coverage is "first party" coverage. For instance, in Reese v. State Farm Mutual Automobile Insurance Co., 285 Md. 548, 403 A.2d 1229 (1979), the Maryland Supreme Court stated that "the uninsured motorist coverage is in insurance parlance `first party coverage' like collision, comprehensive, medical payments or personal injury protection, and not `third party coverage' such as personal injury or property damage liability insurance." Reese, 285 Md. at 552, 403 A.2d at 1231-32. Our research did not uncover any Illinois cases specifically addressing whether UM coverage is "first party coverage" or "third party coverage." However, because the issue is whether the policy itself is ambiguous, we look to its language to make that determination. The first page of the Agreement unambiguously states that "[t]his policy provides no first party insurance coverage (including but not limited to, any uninsured motorist coverage, underinsured motorist coverage, personal injury protection of any medical payments coverage)." Despite plaintiffs' contentions, we find that this language unambiguously excludes UM/UIM coverage from the PUP.

4. Ambiguity of PUP Exclusions
Lastly, plaintiffs argue that the PUP exclusions in the policy are ambiguous because they do not mention UM or UMBI coverage at all. For instance, plaintiffs contend, PUP Exclusion Number 1, which states that "This insurance does not apply to: Bodily injury or personal injury to any insured," does not clearly exclude UM bodily injuries. If defendants intended to exclude such coverage they should have expressly done so, plaintiffs argue. This issue was addressed in Hartbarger, wherein the plaintiff argued that the umbrella policy was ambiguous because uninsured motorist coverage was not specifically listed in the exclusions to the umbrella policy. Hartbarger, 107 Ill.App.3d at 393, 63 Ill. Dec. 42, 437 N.E.2d 691. This court rejected that argument, stating that "the failure of the insurer to list uninsured motorist coverage in the exclusions to the umbrella policy does not create any ambiguity in the view of numerous terms limiting the umbrella policy to excess liability coverage. * * * [E]xclusions are relevant in construing an insurance policy only when the policy provides coverage in the first place. [Citation.] The umbrella policy did not provide uninsured motorist protection, and thus there was no need to exclude it." Hartbarger, 107 Ill.App.3d at 394, 63 Ill.Dec. 42, 437 N.E.2d 691.
Similarly, in this case, the PUP expressly states that the policy "provides no first party insurance coverage" and only provides excess liability coverage. Therefore, the fact that the exclusion does not expressly state that uninsured motorist coverage is excluded is irrelevant because such coverage was not provided to the insureds to begin with.

III. CONCLUSION
Because the antistacking provisions in the Abrams' auto policy unambiguously preclude stacking UM coverage and the Abrams' PUP does not provide UM coverage, the plaintiff's recovery is limited to the $500,000-per-accident UM liability *1191 limit of the Abrams' auto policy, which defendant has already paid.
For the foregoing reasons, we affirm the order of the trial court granting defendant's motion to dismiss their complaint pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) and denying their cross-motion for summary judgment.
STEELE and COLEMAN, JJ., concur.